**2016 UT App 231**

## THE UTAH COURT OF APPEALS

IOTA LLC AND CALIFORNIA BENEFIT INC.,
*Appellees,*
*v.*
DAVCO MANAGEMENT COMPANY LC AND DAVID FISHER,
*Appellants.*

Opinion
No. 20130552-CA
Filed November 25, 2016

Fifth District Court, St. George Department
The Honorable James L. Shumate
No. 080502981

Darwin C. Fisher, Attorney for Appellants

Paul D. Veasy, Alan S. Mouritsen, and Douglas C.
Naftz, Attorneys for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and KATE A. TOOMEY concurred.[1]

ROTH, Judge:

¶1      This case returns to us after we vacated a contempt judgment and remanded to the district court in *Iota, LLC v. Davco Mgmt. Co.* (*Iota I*), 2012 UT App 218, 284 P.3d 681. That decision was based on a procedural defect, and on remand Iota LLC and California Benefit Inc. (collectively, Iota) cured the defect. The district court entered a new contempt judgment, from which

---

1. After hearing the arguments, Judge James Z. Davis passed away and did not participate in the consideration of this case. Judge Kate A. Toomey, having reviewed the briefs and listened to a recording of the oral arguments, substituted for Judge Davis and participated fully in this decision.

Davco Management Company LC and David Fisher[2] (collectively, Davco) now appeal. We affirm.

## BACKGROUND

¶2      A full account of the background in this case is available in *Iota I*, 2012 UT App 218, ¶¶ 2–9. In summary, Davco contracted with Iota for the purchase of two apartment complexes in St. George, Utah. The sale was owner-financed and Davco executed a promissory note to Iota for each property, both with maturity dates in December 2007. Payment of the notes was secured by trust deeds for each property. Among other things, the trust deeds granted Iota a security interest in the form of an assignment of the rents and other sources of revenue associated with the apartments on the two properties in the event of a default.

¶3      By September of 2008, the promissory notes were long past due and negotiations to resolve the defaults had proved unsuccessful. Davco stopped making payments on the notes, which triggered foreclosure on the properties and this lawsuit. During the initial stage of this suit, Iota moved ex parte for an order requiring Davco to deposit all apartment rents into court. The motion was based on Utah Rule of Civil Procedure 67, which provides that a court may order a party to deposit with the clerk of court "any money or other thing" that is shown by admissions in the pleadings or "upon the examination of a party," to belong to or be "due to another party."

¶4      The district court issued an order on November 5, 2008 (the Ex Parte Order) requiring Davco Management and Fisher to

---

2. Although David Fisher is not listed as an appellant on the caption of the opening brief in this case, the notice of appeal listed both Davco Management and Fisher as appellants, and counsel's signature block confirms that he represents both Davco Management and Fisher.

deposit with the court all rents collected. Davco was properly served and neither filed an objection nor moved to have it set aside. Davco Management, through Fisher, collected and retained apartment rental payments and other revenue from September 2008 until the foreclosure sale was completed in February 2009. However, Davco deposited money with the court only once, in August 2009, when it remitted $33,805.33. The single deposit was considerably less than the amount Davco had collected after the Ex Parte Order was entered, and Davco made the deposit only after "the Court made clear [in a hearing attended by Fisher] its displeasure with Davco's and David Fisher's failure to pay collected rents . . . into the Court."

¶5    Following the foreclosure sale of the properties, Iota sought deficiency judgments against Davco and to recover the rents and other revenue that Davco collected between September 1, 2008, and February 20, 2009. In addition, Iota argued in its trial brief that both Davco Management and Fisher should be held in contempt for failing to comply with the Ex Parte Order. Davco responded to the contempt argument by challenging the court's contempt jurisdiction on the basis that Iota had failed to file an affidavit of the facts constituting contempt as required by Utah Code subsection 78B-6-302(2). Davco also moved to have the Ex Parte Order struck, asserting that the trial court failed to comply with Utah Rule of Civil Procedure 67 in issuing it. The court denied both motions.

¶6    Iota prevailed at trial on its breach of contract and deficiency claims and successfully urged the court to hold Davco Management and Fisher in contempt for failing to comply with the Ex Parte Order. The court entered deficiency judgments against Davco (calculated as the difference between the proceeds of the trustee's sale and the unpaid balance of the promissory notes) and awarded Iota its attorney fees. The district court made two other rulings relevant to the current appeal. First, it concluded that Davco's failure to remit rents and other revenues to Iota after it defaulted on the promissory notes was a violation of the trust deeds' requirement to do so. Second, it held both

Davco Management and Fisher in contempt for their failure to comply with the Ex Parte Order. The court entered a separate contempt judgment in the amount of $71,119.17 for revenues withheld, plus attorney fees.

¶7    In *Iota I*, this court affirmed the deficiency judgments. However, we vacated the contempt judgment against Davco Management and Fisher. Our decision turned on the requirement that, "[w]hen the contempt is not committed in the immediate view and presence of the court or judge, an affidavit . . . shall be presented . . . of the facts constituting the contempt." Utah Code Ann. § 78B-6-302(2) (LexisNexis 2012). We determined that Iota never filed an affidavit, and as a consequence, "we reverse[d] the trial court's contempt rulings against Davco and Fisher for lack of jurisdiction and remand[ed] to the trial court for additional proceedings, on the contempt matter only . . . ." *Iota I*, 2012 UT App 218, ¶ 40. Further, "because we reverse[d] the contempt rulings on jurisdictional grounds, we determine[d] that any error relating to the trial court's Ex Parte Order was harmless" and therefore did not address Davco's challenges to the order on the merits. *Id.*

¶8    On remand, Iota filed an affidavit in support of its allegations of contempt against Davco, and the district court scheduled an evidentiary hearing to address the matter. At the hearing, the court took notice of the evidence, facts, and orders of the court from the prior contempt proceedings, "except for those portions reversed by [this court in *Iota I*]." In addition, Fisher testified for Davco Management as its managing member and on his own behalf, and Iota presented the testimony of its officer, Richard T. Murset.[3] At the conclusion of the hearing, the district court again held both Davco Management and Fisher in contempt based on a review of *Iota I*, briefing and testimony

---

3. Murset is a managing member of Iota LLC and vice president of California Benefit Inc.

from the postappeal hearing, and evidence from the prior proceedings.

¶9      In its second contempt order, the district court concluded that the affidavit filed by Iota satisfied the statute's requirement and that the jurisdictional issue identified in *Iota I* had thus been satisfied. The court also concluded that the collateral bar doctrine precluded Davco from arguing that the Ex Parte Order was improperly issued:

> Davco and David Fisher violated Utah Code Annotated § 78B-6-301 by knowingly disobeying this Court's Ex Parte Order in failing to turn over the rents to the court clerk for further disposition by Order of this Court. David Fisher, on behalf of himself and his company, Davco, has knowingly and wrongfully retained the security deposits and has failed to deliver those amounts to Iota . . . to apply towards Plaintiffs' debt obligations.

The district court found Davco Management and Fisher in contempt and entered judgment against both in the sum of $116,025.02, which included the amount of the withheld rents and other revenues as well as Iota's attorney fees incurred in the contempt proceedings both before and after *Iota I*. Davco appeals.

ANALYSIS

¶10      Davco raises multiple challenges to the district court's decision finding Davco Management and Fisher in contempt for failure to comply with the Ex Parte Order. Specifically, Davco contends that the district court either erred or abused its discretion by: (1) holding Davco in contempt based on an unclear and ambiguous Ex Parte Order; (2) awarding Iota damages; (3) finding Davco in contempt of court; (4) affirming its prior judgment for contempt; (5) awarding Iota its attorney

fees and costs incurred in the preremand proceedings; (6) finding that the Order was valid and lawful; (7) denying Davco's motion to strike the Order; (8) taking judicial notice of all the facts, orders, and documents from the principal case; and (9) denying Davco the opportunity to present evidence showing that Iota's calculation of the withheld rents was wrong.

¶11 The issues fall into three categories: those challenging the validity of the Ex Parte Order, those challenging the district court's finding that Davco was in contempt for violating the Ex Parte Order, and those challenging the district court's award of attorney fees to Iota. We address them in that order.

## I. The Validity of the Ex Parte Order

¶12 Davco asserts that the Ex Parte Order was invalid and unenforceable because it failed to comply with rule 67 of the Utah Rules of Civil Procedure and, as a consequence, the district court should have struck it.[4] We first consider whether the district court properly concluded that the collateral bar doctrine blocked Davco's motion to strike the Ex Parte Order; only if that decision was incorrect need we consider the merits of Davco's argument that the order was invalid. The applicability of the collateral bar doctrine presents a question of law that we review for correctness. *Cf. PC Riverview LLC v. Cao*, 2016 UT App 178, ¶ 5 n.3, 381 P.3d 1185. We agree with the district court that the collateral bar doctrine precludes Davco from waiting until after it violated the Ex Parte Order to challenge its validity.

A. The Collateral Bar Doctrine

¶13 "Under the collateral bar doctrine, a party may not challenge a district court's order by violating it. Instead, he must move to vacate or modify the order, or seek relief in [an appellate court]." *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir.

---

4. This description of Davco's contentions encompasses both its sixth and seventh arguments on appeal.

1995). "If he fails to do either, ignores the order, and is held in contempt, he may not challenge the order unless it was transparently invalid or exceeded the district court's jurisdiction." *Id.*

¶14    On remand, Iota restarted the contempt proceeding by filing the affidavit required to correct the procedural problem we identified in *Iota I*. The district court held an evidentiary hearing to consider anew whether Davco should be held in contempt for failure to deposit rents in violation of the Ex Parte Order. At that hearing, the court considered Davco's motion to strike the Ex Parte Order based on the argument that the order failed to comply with the requirements of Utah Rule of Civil Procedure 67. In its written ruling the court found that, after the Ex Parte Order was entered and served on Davco Management and Fisher in November 2008, neither "filed an objection" nor "moved to have [the order] set aside." It also found that Davco thereafter failed to deposit collected rents into the court as the Ex Parte Order required until August 7, 2009, when Davco deposited $33,805.33 in response to the court's expressed "displeasure with Davco's . . . failure to pay." The court further noted that Davco did not "raise[] a challenge to the validity of the Ex Parte Order until the time of trial, almost eighteen months after the Ex Parte Order was issued and after the order had already been violated." Because they "chose to ignore the Ex Parte Order" rather than bring a timely challenge to its validity, the district court determined that Davco's "challenge[] to the Court's order of contempt [is] barred by the collateral bar doctrine."

¶15    Utah appellate courts have not addressed the collateral bar doctrine in modern times, other than nonbinding dicta in *Iota I*, 2012 UT App 218, ¶¶ 37–38, 284 P.3d 681.[5] However, our

---

5. In *Iota I*, Judge Davis offered guidance on the collateral bar doctrine to the district court. 2012 UT App 218, ¶¶ 37–38, 284 P.3d 681. However, Judges Voros and McHugh did not join in

(continued…)

supreme court acknowledged the fundamentals of the doctrine as early as 1932 in *Utah Power & Light Co. v. Richmond Irrigation Co.*, 13 P.2d 320, 324 (Utah 1932) ("A party may question the order which he is charged with refusing to obey, only insofar as he can show it to be absolutely void . . . ." (citation and internal quotation marks omitted)). And several years later in *Liquor Control Commission v. McGillis*, the supreme court stated that "the mere fact that an [order] was not justified by the facts of the particular case or was erroneous or improvident in any way is no defense" to violating the order. 65 P.2d 1136, 1141 (Utah 1937). Based on these acknowledgments, we are convinced that the collateral bar doctrine applies in Utah even if our precedent has not explicitly used that term, and we look to other courts for guidance on the application of this widely recognized doctrine.

¶16    "The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Maness v. Meyers*, 419 U.S. 449, 459 (1975) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947)). The collateral bar doctrine follows directly from that premise; the doctrine "provides that a party may not challenge a court's order by violating it." 17 C.J.S. *Contempt* § 24 (2016). Indeed, the legitimacy of the judicial process itself would be jeopardized if parties were free to determine for themselves when and how to obey court orders. *See id.* (noting that the collateral bar rule "advances important societal interests in an orderly system of government, respect for the judicial process and the rule of law, and the preservation of civil order" to "protect the authority of the courts when they address close questions and to create a strong incentive for parties to follow

_____

(…continued)
his concurrence, which thus did not become the opinion of this court. *Id.* ¶ 42 (Voros, J., concurring in part and writing for the majority in part).

the orderly process of law"). In this sense, "[t]he collateral bar rule is a cornerstone of a system of orderly and efficient adjudication." *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 730 (9th Cir. 1989).

¶17    The collateral bar doctrine underscores the principle that "no man can be judge in his own case." *Walker v. City of Birmingham*, 388 U.S. 307, 320 (1967) (holding that petitioners, who deliberately violated an injunction without first attempting to dissolve it, were properly convicted of criminal contempt). Thus, a party is foreclosed from making a private determination that a court's order need not be obeyed because it is legally incorrect. *See Maness*, 419 U.S. at 458 ("Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."). Rather, "[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review . . . , its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority." *United Mine Workers*, 330 U.S. at 294. The policy advanced by this doctrine is fundamental: "[R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Walker*, 388 U.S. at 321.

¶18    Although the collateral bar doctrine has not been adopted in Utah by name, its underlying principle is clearly acknowledged. As our supreme court put it, "disobedience of an order made by a court within its jurisdiction and power is a contempt [even if] the order [is] clearly erroneous." *Liquor Control Comm'n*, 65 P.2d at 1140 (citation and internal quotation marks omitted). That bedrock principle accords with other aspects of Utah law, such as the ethical responsibility of attorneys to obey court orders: "The rules of ethics dictate that attorneys may not protest adverse rulings by violating them in the name of zealous advocacy. The proper method for contesting an adverse ruling is to appeal it, not to violate it." *State v. Clark*, 2005 UT 75, ¶ 36, 124 P.2d 235. In other words, it is well

recognized that respect for judicial authority is essential to the orderly functioning of the judicial branch, and the collateral bar doctrine is a natural corollary. Accordingly, we conclude that the district court was justified in applying the doctrine in response to Davco's late challenge to the validity of the Ex Parte Order.

B.     Application of the Collateral Bar Doctrine

¶19     Davco does not contest the district court's determination that Davco violated the Ex Parte Order for nearly eighteen months without challenging it. Rather, Davco argues that the collateral bar doctrine does not apply here because the order was beyond the district court's jurisdiction and was transparently invalid. We disagree.

1.     The District Court's Jurisdiction

¶20     The collateral bar doctrine requires a party to heed a valid court order unless and until it is reversed by orderly judicial proceedings. However, an order is not valid if the order "exceeded the district court's jurisdiction." *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995). Stated affirmatively, the court must be operating within its jurisdiction for an order to be valid. *Liquor Control Comm'n v. McGillis*, 65 P.2d 1136, 1140 (Utah 1937); *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) (indicating that only "an order issued by a court with jurisdiction over the subject matter and person must be obeyed"). This follows naturally from the essential nature of jurisdiction—without subject matter jurisdiction over a case and personal jurisdiction over a party, a court is literally powerless. *E.g.*, *State v. Rhinehart*, 2007 UT 61, ¶ 19, 167 P.3d 1046 (discussing subject matter jurisdiction). *See generally* 56 Am. Jur. 2d *Motions, Rules, and Orders* § 47 (2016) (explaining that subject matter jurisdiction and personal jurisdiction are necessary prerequisites to establishing a court's authority). Thus, the collateral bar doctrine acknowledges an essential exception: if a court lacks either subject matter or personal jurisdiction, then its orders are unenforceable and need not be followed. Otherwise, they must. As a result, the only way a party can successfully

attack an order "which he is charged with refusing to obey" is if the party can "show it to be absolutely void." *Liquor Control Comm'n*, 65 P.2d at 1140–41 (citing *Utah Power & Light Co. v. Richmond Irrigation Co.*, 13 P.2d 320, 324 (Utah 1932)).

¶21     This distinction—between orders that are void for lack of jurisdiction (or, void ab initio) and those that are merely voidable based on error—makes a difference. "Errors other than lack of jurisdiction render the judgment merely voidable, and a voidable judgment can only be challenged on direct appeal." *Bangerter v. Petty*, 2010 UT App 49, ¶ 8, 228 P.3d 1250 (citation and internal quotation marks omitted) (distinguishing between void and voidable in the property context). Thus, an order issued by a court lacking jurisdiction is void and differs in kind from an order issued in error by a court with jurisdiction, which is merely voidable. A void order may be attacked collaterally at any time because the court was powerless to issue it in the first place; the collateral bar doctrine does not apply. On the other hand, a voidable order may only be challenged directly; the doctrine precludes an untimely attack on its validity. For purposes of this case, that means that we need only determine if the district court lacked subject matter or personal jurisdiction when it issued the Ex Parte Order. If it lacked either, then the Ex Parte Order was void ab initio and no contempt could lie. Otherwise, the Ex Parte Order was at best voidable, and a challenge made after violating it would be untimely and amount to a collateral attack precluded by the collateral bar doctrine.

¶22     Here, there is no dispute that the court had subject matter jurisdiction over the case as well as personal jurisdiction over Davco at the time the Ex Parte Order was entered. "In determining whether a court has subject matter jurisdiction, we focus on whether the court has authority over the general class of cases to which the particular case at issue belongs, rather than on the specific facts presented by any individual case." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 33, 266 P.3d 702. This case was a civil matter within the general jurisdiction of the district court. Utah Const. art. VIII, § 5; Utah Code Ann. § 78A-5-102(1)

(LexisNexis 2012); *see also* Utah Code Ann. § 78A-2-201 (LexisNexis 2012) (allowing courts to "control in furtherance of justice the conduct of . . . persons in any manner connected with a judicial proceeding"). Personal jurisdiction was proper because the suit related to real estate located in Utah. Utah Code Ann. § 78B-3-205 (LexisNexis 2012) (listing "the ownership, use, or possession of any real estate situated in this state" as sufficient to confer personal jurisdiction). In addition, both Davco Management and Fisher were properly served with process and, later, with the Ex Parte Order itself. Finally, Utah Code section 78A-2-201, as well as Utah Rule of Civil Procedure 67, authorize district courts to enter orders of the Ex Parte Order's kind.

¶23 Davco's argument that the "specific facts presented" by Iota were legally insufficient to support the Ex Parte Order does not implicate the court's essential jurisdiction over the subject matter of the case or personal jurisdiction over the parties. Rather, it is simply a claim that the court erred in applying a rule of procedure. Accordingly, we conclude that the Ex Parte Order was not void ab initio and Davco's untimely challenge to its validity was barred by the collateral bar doctrine.

2.      Transparently Invalid Orders

¶24 Davco also argues that the Ex Parte Order fits into an exception to the collateral bar rule because it so obviously failed to meet the requirements of Utah Rule of Civil Procedure 67 that it was transparently invalid. In support of the transparently invalid exception, Davco points us to *United States v. Terry*, which notes that "[a]n order is transparently invalid when the issuing court 'is acting so far in excess of its authority that it has no right to expect compliance and no interest is protected by requiring compliance.'" 802 F. Supp. 1094, 1101 (S.D.N.Y. 1992) (quoting *In re Providence Journal Co.*, 820 F.2d 1342, 1347 (1st Cir. 1986)). This exception is described elsewhere as well: "A limited exception to the collateral bar rule is made in those extremely rare cases where the order may be transparently invalid." 17 C.J.S. *Contempt* § 24 (2016). But the exception comes with a significant proviso that limits its application: "As a general rule,"

if there was "any pretense to validity at the time [the order] was issued, the reviewing court should enforce the collateral bar rule." *Terry*, 802 F. Supp. at 1101 (citation and internal quotation marks omitted).

¶25  It is difficult to see a meaningful distinction between the void ab initio exception discussed above and a transparent invalidity exception that requires the disputed order "to have had [no] pretense to validity at the time it was issued." *See United States v. Mourad*, 289 F.3d 174, 178 (1st Cir. 2002). But whatever legal daylight there may be between the two exceptions in concept, application of a separate transparent invalidity exception seems foreclosed by our supreme court, which has plainly stated that "disobedience of an order made by a court within its jurisdiction and power is a contempt, [even if] the order [is] clearly erroneous." *Liquor Control Comm'n*, 65 P.2d at 1140 (citation and internal quotation marks omitted). The supreme court underscored this point when it stated:

> A party may question the order which he is charged with refusing to obey, only insofar as he can show it to be absolutely void; he cannot be heard to say that it is merely erroneous, however flagrant it may appear to be since judgments of courts cannot be attacked collaterally for mere irregularities.

*Utah Power & Light Co. v. Richmond Irrigation Co.*, 13 P.2d 320, 324 (Utah 1932) (citation and internal quotation marks omitted). In the apparent absence of any intervening shift in approach, the mere passage of time since the court made these pronouncements does not diminish their claim on our allegiance.

¶26  In any event, we do not need to decide whether Utah would recognize a separate transparently invalid exception because Davco has not complied with a condition precedent to its invocation. A party who seeks the protection of this exception "must make some good faith effort to seek emergency relief from

the appellate court" before violating the subject order. *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995) (citation and internal quotation marks omitted). Davco did not do that here.[6]

¶27    In sum, because the order was well within the district court's subject matter jurisdiction, and because Davco took no action to challenge the Ex Parte Order before violating it, we see no error in the district court's determination that the collateral bar doctrine prevented Davco from challenging the validity of the Ex Parte Order in the contempt proceeding.

## II. The District Court's Contempt Decision

¶28    Davco next argues that the district court abused its discretion by finding Davco in contempt for violating the Ex Parte Order. The arguments challenge both the substantive merits of the district court's decision and the regularity of the

---

6. And even if we were to reach the merits of Davco's transparent invalidity argument, the result would not be a close call. The arguments that Davco now makes about the Ex Parte Order's invalidity focus on the legal requirements of Utah Rule of Civil Procedure 67 and whether the Ex Parte Order was justified under the circumstances. But even if the court erred in granting issuing the order, a question we do not decide here, it is neither manifest nor obvious from the contents of the order itself. The Ex Parte Order simply directs Davco to deposit the same rents into court that Davco was already obligated to pay to Iota under the trust deeds after default. Such an order is not on its face an unusual exercise of judicial authority; it certainly does not fit within the rare category of court orders which can be said to have no pretense to validity or were issued so far in excess of the court's authority that it had no right to expect compliance. Indeed, Davco itself concedes on appeal that it "believed the Ex Parte Order to be valid until shortly before the trial began" and did not modify that view until long after it had violated the order.

postremand process by which the court reached its decision.[7] On the merits, Davco argues that the district court had no basis for a contempt finding, first, because the language of the Ex Parte Order was unclear and ambiguous about what was required, and second, Davco could not comply with the order based on Davco's reasonable interpretation of the order. Regarding the post-remand contempt proceedings, Davco contends that the district court improperly affirmed its prior contempt order, which had been overturned in *Iota I* and (apparently in the alternative) that the court erred in taking judicial notice of evidence and findings from the prior proceedings to support its contempt finding on remand.

¶29 "[An appellate court's] review of a contempt citation involves two questions: first, whether the underlying order is lawful; and second, whether the party's conduct in violating the order constitutes contempt of court." *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1074 (Utah 1988). On the lawfulness question, we have already determined that Davco is barred from challenging the validity of the Ex Parte Order after violating it. On the conduct question, to hold Davco in contempt the court had to find that Davco "knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Summer v. Summer*, 2012 UT App 159, ¶ 8, 280 P.3d 451 (citation and internal quotation marks omitted). "When the contempt is not committed in the immediate view and presence of the court or judge, we review a district court's findings of fact for clear error and apply a correction of error standard to our review of the district court's legal determinations." *Valerios Corp. v. Macias*, 2015 UT App 4, ¶ 10, 342 P.3d 1127 (citation and internal quotation marks omitted).

---

7. Davco attacks the district court's contempt holding in issues one, three, four, and eight of its opening brief.

A.     Davco's Challenge to the Ex Parte Order and Contempt
       Judgment

¶30     Davco argues that the district court "abused its discretion
by finding Davco and Mr. Fisher in contempt of court."[8] This
argument rests on Davco's contention that the Ex Parte Order
was ambiguous and that Davco reasonably interpreted it to
apply only to rent money Davco had in hand when the order
issued and not to rents collected thereafter. Based on this
interpretation, Davco claims that it was impossible to comply
because it had no rent money in its possession on the date the Ex
Parte Order issued and, as a result, it could not have
intentionally violated the order. The district court concluded,
however, that the language of the Ex Parte Order was
unambiguous—it required Davco to deposit in court all rents
collected from the properties after the order's date—and that
Davco understood what the order required but chose to disobey
it. We find no fault with the district court's determination.

¶31     The Ex Parte Order states that "Defendants Davco
Management Company LC and David Fisher shall deposit all
rents collected from the real property . . . with the clerk of the
court." Davco argues that the term "rents collected" is
susceptible to several reasonable interpretations, only one of
which would make Davco's failure to deposit rents a violation of
the order, thus leaving Davco with a "reasonable basis for
doubt" regarding its responsibilities.[9] *Cf. Salt Lake City v.*

---

8. Davco addresses this point in issues one and three of its
opening brief.

9. On appeal, Davco addresses each word in this phrase
separately, asserting that each is ambiguous in its own right. But
Davco never asserted the distinct ambiguity of the word "rents"
in the district court. Therefore, Davco's separate argument about
the ambiguity of "rents" on appeal is not preserved and we do
not address it. *See Patterson v. Patterson*, 2011 UT 68, ¶ 17, 266

(continued…)

*Dorman-Ligh*, 912 P.2d 452, 455 (Utah Ct. App. 1996) ("To be enforced, an order must be sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning."). Davco proposes that the term "rents collected" could have three plausible meanings: (1) all rents collected from the time Davco purchased the apartment complexes to the date of the Ex Parte Order; (2) all rents from the date Davco stopped payments on the Promissory Notes to the date of the Ex Parte Order; or (3) all rents collected from the time the Ex Parte Order was entered to the termination of the lawsuit or rescission of the order.

¶32    Under the first two readings, the court's directive applied only to a snapshot in time—rents Davco physically held at the moment the Ex Parte Order issued—and thus, Davco reasons, it could not have violated the order because it had no rents in hand at that precise moment. Davco asserts that it reasonably understood its obligation to deposit rents with the court to apply

---

(…continued)
P.3d 828 (noting that "[the Utah Supreme Court] and the Utah Court of Appeals have on countless occasions exercised [their] discretion to refuse to consider new issues, arguments, claims or matters on appeal" that were not raised below). In addition, Davco concedes that the term "rents" as used in the order includes at least the tenants' basic rental payments, even if it arguably does not include security deposits, issues and profits, and subrents, all of which are encompassed by the assignment in the trust deeds. Any ambiguity in "rents" therefore goes to the amount Davco should have paid into court, not whether Davco was required to pay any money into court at all. Davco does not dispute that it failed to pay anything into court during the time the Ex Parte Order was in force. And as a practical matter, Davco's arguments on appeal regarding the ambiguity of the word "collected" seem to more readily encompass the phrase "rents collected"—the language it focused on below—rather than each word separately. Thus, we focus on the meaning of that phrase in our analysis.

only to rents it possessed at the time of the order because the Ex Parte Order stated that it applied to "all rents collected," using the past-tense form of "collect." Davco therefore contends the word "collected" is ambiguous as used in the Ex Parte Order, and that the court erred by interpreting it to unambiguously apply prospectively.

¶33 Generally, we interpret language in judicial documents in the same way we interpret contract language. *See Williams v. Miller*, 794 P.2d 23, 26 (Utah Ct. App. 1990) ("If the language of a judgment is obscure or ambiguous, the rules that apply to the construction of ambiguous contracts apply."). "An order is ambiguous if it is subject to two plausible constructions." *Progressive Acquisition, Inc. v. Lytle*, 806 P.2d 239, 243 (Utah Ct. App. 1991). But "words and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 17, 133 P.3d 428. Rather, "[t]o be ambiguous, both interpretations must be plausible in the context of the [order] as a whole." *Merrick Young Inc. v. Wal-Mart Real Estate Bus. Trust*, 2011 UT App 164, ¶ 18, 257 P.3d 1031. Therefore, we look both at the language of the Ex Parte Order "as a whole and to the circumstances, nature, and purpose of the [order]" to determine its meaning. *Peirce v. Peirce*, 2000 UT 7, ¶ 19, 994 P.2d 193.

¶34 Davco has not persuaded us that the phrase "rents collected" in the Ex Parte Order can be reasonably read to exclude those rents it collected after the order's entry. The district court stated,

> the Court understands this order to mean as of the fourth of November, 2008—actually, as of service upon Mr. David Fisher, that the rents collected on those two properties thereafter would be paid into the clerk of the court. I think that's the plain reading of the order. It does not have the lengthy language in it that an insurance company might

> want in their policies, but it's pretty direct and
> pretty clear from the Court's order.

We agree with the district court. The Ex Parte Order provides that Davco "shall deposit all rents collected . . . ." In context, reading this phrase to include rents already collected but to exclude rents yet to be collected is not plausible because the order contains no language limiting its application to rents already collected, previously collected, or heretofore collected. And rents that will be received in the future fall naturally within the meaning of "collected," which the court used in its adjectival form—meaning "gathered together"[10]—rather than as a past-tense rendition of the verb "to collect." Thus, while the term includes rents already collected and in hand, it also plainly encompasses rents that may be collected in the future. This reading is reinforced by language in the same paragraph providing that "[t]his order shall remain in effect during the pendency of this action, or until further order of the Court." Given this clear description of the time frame in which the order would hold sway, "rents collected" cannot reasonably be interpreted to exclude rents that will be "collected" prospectively, that is, "during the pendency" of the case. In other words, the Ex Parte Order required Davco to hand money over to the court every time it collected rent, not just to hand over rent money it had already collected and had in hand on whatever day the order happened to arrive.[11]

---

10.  *Collected*,  Merriam-Webster.com,  http://www.merriam-webster.com/dictionary/collected [https://perma.cc/PP87-65V9].

11. This interpretation was applied by the district court, which calculated the contempt damages as the amount of money that Davco improperly collected between being served with the Ex Parte Order and the foreclosure sale. The court did not find that Davco had previously collected rent money in hand at the time of the Ex Parte Order.

¶35    Additionally, another provision of the Ex Parte Order required all tenants of the two apartment properties to "deposit their rent checks with the clerk of the court . . . until further order of the court." It is impossible to reconcile Davco's contention that the Ex Parte Order did not require it to deposit "rents collected" from tenants during the pendency of the litigation with the tenants' ongoing obligation to pay rents to the court. That is, no reasonable interpretation of the Ex Parte Order as a whole can allow Davco to treat rent money as having escaped the reach of the order simply because a tenant happened (whether through ignorance, inadvertence, or confusion) to pay rent to Davco instead of depositing it with the court. *Cf. Peterson & Simpson v. IHC Health Services, Inc.*, 2009 UT 54, ¶ 13, 217 P.3d 716 (explaining that "we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless" (citation and internal quotation marks omitted)).

¶36    Further, Davco's own actions belie its argument that it did not understand what the Ex Parte Order required. For example, in March of 2009, after Iota had reacquired the two apartment properties at the foreclosure sale, Davco signed a Stipulated Order stating that "[t]he Ex Parte Order required that Defendant and the tenants pay rents to the Court 'during the pendency of this action or until further order of the Court.'" The Stipulated Order went on to say that, as a result of the foreclosure sale, "there is no longer a need for rents to be paid directly to the Court during the pendency of this action." This language strongly suggests that Davco understood the Ex Parte Order just as the court later interpreted it. And some months later in response to the district court's admonishment at a hearing in August 2009, Davco paid almost $34,000 into court for rents collected after November 2008 without raising any claim that the Ex Parte Order was not prospective in nature.

¶37    Thus, we agree with the district court's conclusion that "[t]he language of the Ex Parte Order was clear and unequivocal." The Ex Parte Order was not ambiguous, and the court did not abuse its discretion when it concluded that Davco

"knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Summer v. Summer*, 2012 UT App 159, ¶ 8, 280 P.3d 451 (citation and internal quotation marks omitted). In addition, the court's determination that Davco understood the requirements of the Ex Parte Order and knowingly disobeyed it is fully supported by the record.

B.      The District Court's Proceedings

1.      The District Court's Treatment of the Preremand Contempt Judgment

¶38     The district court's contempt decision on remand included the statement, "The prior Judgment for contempt against Davco and David Fisher stands and is affirmed." Davco contends that the district court erred in simply reaffirming a decision that had been vacated by this court on appeal in *Iota I*. But Davco's argument ignores context, and the context in which the district court's statement appears shows that the court did not simply reaffirm the prior vacated judgment. In full, the paragraph containing the sentence relied on by Davco states:

> Further, the Court's Ex Parte Order was valid and enforceable even if Defendants could challenge it. *The prior judgment against Davco and David Fisher stands and is affirmed.* This Court had both subject matter and personal jurisdiction to issue the Ex Parte Order. The language of the Ex Parte Order was clear and unequivocal that rents were to be deposited with the Clerk of the Court and the Ex Parte Order remained in effect during the pendency of this action, or until further order of the Court.

(Emphasis added.) This paragraph responds to Davco's arguments on remand that it could not and should not be held in contempt; it is not a simple affirmance of the prior judgment. And the surrounding paragraphs of the court's decision support

that conclusion—they show a judge engaging in renewed analysis of the evidence and the law and concluding again that Davco was in contempt for violation of the Ex Parte Order. Thus, it is apparent that by saying "[t]he prior judgment . . . stands and is affirmed," the court was not expressing an intention to resurrect the judgment that we vacated in *Iota I*. Rather, the court was simply reaffirming the substantive merit of its earlier conclusions about the validity of the Ex Parte Order in response to renewed arguments from Davco. Indeed, on remand the district court held a new evidentiary hearing and considered new briefing and arguments from the parties, as well as additional testimony. Accordingly, because the district court did not purport to simply reinstate the prior contempt judgment, Davco's arguments on appeal rest on a faulty premise and consequently fail.

2.      Judicial Notice of the Preremand Contempt Proceedings

¶39     On remand, Iota requested that the district court take judicial notice of significant portions of the preremand contempt proceedings. The court agreed and, in addition to taking judicial notice of the specific documents and proceedings that Iota enumerated, the court stated that all aspects of the initial contempt proceedings "except for those portions reversed by the Court of Appeals are the law of the case." Davco argues that "the trial court abused its discretion in taking judicial notice of all the facts, orders, and documents in the principal case," including the prior "Findings of Fact and Conclusions of Law, all of [the] Exhibits, all of its orders, depositions, affidavits, and all pleadings, etc."[12]

_____

12. The district court used both "judicial notice" and "law of the case" in describing its consideration of preremand proceedings. Although there is a difference in meaning between those terms of art, the distinction is irrelevant here because Davco's argument does not assail the propriety of the district court's

(continued…)

¶40    The general rule is that "[c]ourts may take judicial notice of the records and prior proceedings in the same case." *Riche v. Riche*, 784 P.2d 465, 468 (Utah Ct. App. 1989); *see also State v. Shreve*, 514 P.2d 216, 217 (Utah 1973) (noting that judicial notice of prior proceedings is appropriate "insofar as those records are a part of the matter before the court"). A court may take judicial notice of prior proceedings on its own accord, Utah R. Evid. 201(c)(1), and is required to take judicial notice of adjudicative facts "if a party requests it and the court is supplied with the necessary information," *id.* R. 201(c)(2). Furthermore rule 201(d) states, "The court may take judicial notice at any stage of the proceeding." Davco argues the district court erred in taking judicial notice of aspects of the prior proceedings on two grounds: first, the contempt proceeding on remand was a separate case not properly the subject of judicial notice and, second, the earlier proceedings were null and void, so there were no valid records to consider.

¶41    Davco's first contention is unpersuasive given that this court specifically ordered a "remand to the trial court for additional proceedings[] on the contempt matter" in *Iota I*. 2012 UT App 218, ¶ 40, 284 P.3d 681. It is difficult to conceive of "additional proceedings" in the same case and on the same subject matter amounting to a "different case" for purposes of judicial notice.

¶42    Equally unpersuasive is Davco's contention that the district court's judicial notice of the preremand contempt

---

(…continued)
actions regarding the individual documents, findings, or proceedings it considered or took note of. Rather, Davco's argument is that none of that material was properly before the court on remand because it was not properly the subject of judicial notice under the circumstances. We therefore address the issue here as a question of judicial notice because that is how Davco has presented it on appeal.

proceedings was improper because the earlier proceedings were null and void. Davco's argument rests on the unstated premise that, when we vacated "the trial court's contempt rulings against Davco and Fisher for lack of jurisdiction," *id.* ¶ 40, we were talking about subject matter jurisdiction in its fundamental sense—the court's essential authority to act in the area of the law at issue. We were not. Rather, we used the term "jurisdiction" in the broader procedural sense, where a court's ability to conduct a particular proceeding or grant a specific remedy—otherwise within its authority—is curtailed because a legal requirement has not been fulfilled.

¶43   That conclusion is apparent in our analysis in *Iota I*, which turned on an element of the contempt statute in Utah Code section 78B-6-302(2). *Id.* ¶¶ 34–35. There, we held that Iota's contempt efforts were not "sufficient under the statute to confer jurisdiction" because no supporting affidavit had been filed. In essence, we used "jurisdiction" as shorthand to indicate a procedural problem—the unsatisfied affidavit element of the statute—which prevented the court from acting under the circumstances, not to indicate that the court lacked jurisdiction over the subject matter of the prior contempt proceeding. And while we, like other courts, sometimes use "jurisdiction" as a generic term, the difference between procedural jurisdiction and the subject matter jurisdiction essential to a court's exercise of its bedrock authority is critical.

¶44   "Subject matter jurisdiction concerns a court's power to hear a case. 'A court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court derives its authority.'" *State v. Smith*, 2014 UT 33, ¶ 18, 344 P.3d 573 (quoting *Myers v. State*, 2004 UT 31, ¶ 16, 94 P.3d 211); *see also* 20 Am. Jur. 2d *Courts* § 68 (2016) ("Subject matter jurisdiction does not depend on the particular parties in the case or on the manner in which they have stated their claims . . . ."). Put simply, subject matter jurisdiction concerns a court's broad authority to hear the sort of case before it, whereas *Iota I*'s use of

the term "jurisdiction" simply expressed its concern about the district court's ability to reach a decision or grant given relief when a procedural prerequisite—submission of a supporting affidavit—had not been met. *Cf. 14302 Marina San Pablo Place SPE, LLC v. VCP-San Pablo, Ltd.*, 92 So. 3d 320, 321 (Fla. Dist. Ct. App. 2012) (per curiam) (Ray, J., concurring) ("This species of jurisdiction . . . has also been referred to as 'procedural jurisdiction,' meaning a court's authority to act in a particular case." (footnote omitted)); *In re J.J.*, 855 N.E.2d 851, 855 ("In a court that possesses subject-matter jurisdiction, procedural irregularities . . . affect the court's jurisdiction over the particular case and render the judgment voidable, not void.").

¶45    Here, Iota's failure to file an affidavit as required by the contempt statute falls into the second category. The lack of an affidavit did nothing to divest the court of subject matter jurisdiction over the prior contempt proceeding; contempt proceedings under Utah Code section 78B-6-301 are clearly within a district court's subject matter jurisdiction. Instead, the problem was procedural in nature. Our holding in *Iota I* meant merely that the court could not legally enter the contempt judgment because a condition precedent to the contempt process—the filing of an appropriate affidavit—had not occurred.[13] Thus, the contempt judgment from the first proceeding was voidable on procedural grounds rather than void for lack of subject matter jurisdiction, and our decision in *Iota I* cannot be read more broadly. Because Davco's argument rests on the incorrect premise that the contempt proceedings were void for want of essential jurisdiction, we are not persuaded that the district court erred in taking judicial notice of the preremand contempt proceedings.

---

13. On remand, Iota filed the Murset Affidavit, dated September 12, 2012, which the court found was sufficient to meet the statutory requirements. Davco has not challenged this decision.

¶46   In sum, we conclude that the language of the Ex Parte Order was unambiguous and supported the district court's contempt determination. Also, Davco has not demonstrated that the court's proceedings on remand were improper. The court did not simply affirm its prior decision, and the court's judicial notice of the prior proceedings fit well within a district court's purview under Utah law.

### III. Damages and Attorney Fees

¶47   Davco challenges the district court's award of damages and attorney fees on three grounds: first, that the court should not have awarded damages at all; second, that the court improperly denied Davco the opportunity to rebut Iota's damages calculation; and third, that the court erred in awarding attorney fees for the preremand contempt proceedings.[14] We address each in turn and review all three under an abuse of discretion standard, as Davco urges. *E.g.*, *Valerios Corp. v. Macias*, 2015 UT App 4, ¶ 11, 342 P.3d 1127 ("We review a district court's entry of contempt sanctions for an abuse of discretion.").

### A.   Davco's Challenge to the District Court's Damages Award

¶48   Davco argues that the trial court should not have awarded Iota damages at all. The crux of this contention appears to be the principle that money damages can only be issued in a contempt proceeding "[i]f an actual loss or injury to a party in an action . . . *is caused by the contempt*." *In re Cannatella*, 2006 UT App 89, ¶ 7, 132 P.3d 684 (citation and internal quotation marks omitted); *see also* Utah Code Ann. § 78B-6-311(1) (LexisNexis Supp. 2016). Relying on that point, Davco asserts that "the cause of [Iota's] injury is the failure by Davco to assign rents to [Iota]," not Davco's failure to obey the Ex Parte Order. As we understand it, Davco's contention is that the Ex Parte Order

---

14. Davco raises these arguments in issues two, five, and nine of its opening brief.

simply restated the obligation Davco already had under the trust deeds themselves to deliver assigned rents to Iota after default on the notes. Thus, according to Davco, Iota was damaged in the first instance by Davco's breach of the trust deed obligations, and any failure to deposit the rents in court in accordance with the Ex Parte Order was simply incidental. Under this reasoning, the court could not award damages in the amount of withheld rents because any loss of that sort was a result of Davco's breach of the trust deeds' assignments of rents, not contempt of the Ex Parte Order.

¶49    This argument rests on Davco's attempt to treat the Ex Parte Order as simply a replication of Davco's preexisting obligations under the trust deeds. We reject that characterization for several reasons, chief among them the crucial distinction between obligations arising under private contracts and those arising from a court's exercise of its authority to control the proceedings in a case before it. *See* Utah Code Ann. § 78A-2-201 (LexisNexis 2012) (granting every court the power to "control in furtherance of justice the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it in every matter").

¶50    Under the deeds of trust, Davco had a private contractual obligation to pay over rents to Iota after default, and that obligation existed independent of any court proceeding. But once the court ordered that rents be deposited with the clerk, the Ex Parte Order itself established an obligation distinct and independent from any trust deed requirement because disobedience of a court order implicates the authority of the judiciary and transcends the private contractual interests of the parties from which the order arose. *See id.* Indeed, this is why courts are given contempt powers in the first place: "One of the most important and essential powers of a court is the authority to protect itself against those who disregard its dignity and authority." 17 Am. Jur. 2d *Contempt* § 1 (2016). Thus, by design and necessity a court's orders are of different substance and of higher dignity than private contract rights.

¶51 In this case, the Ex Parte Order also created duties separate and distinct from any obligation that Davco already had under the trust deed. As soon as it was entered and served, the Ex Parte Order became a second layer of obligation that superseded any preexisting or contemporaneous responsibility. In addition to the fact that the Ex Parte Order became preeminent on entry, it also materially changed Davco's obligation.

¶52 Under the assignment of rents in the deeds of trust, after default Davco was required to pay rents it received from tenants directly to Iota. But under the Ex Parte Order, Davco was to pay the rents to the clerk of court. The clerk in effect served as an escrow agent to preserve during the litigation the contractual benefit of Davco's pledge of rents as security under the trust deeds. Thus, by ignoring the Ex Parte Order, Davco denied Iota the benefit of having the court receive and hold the pledged rents for safekeeping. Instead, this ready source of direct recovery on the future judgment in Iota's favor was never funded as the court required and Iota thus lost the most immediate and effective assurance of the benefit of Davco's assignment of rents under the trust deeds. That is, Iota's injury from Davco's noncompliance with the Ex Parte Order was different from any related injury suffered from Davco's breach of the assignment under the trust deeds. Because Davco did not deposit all the rents with the clerk as directed, Iota lost the benefit of immediately recovering at least that portion of its judgment—many tens of thousands of dollars. Instead, Iota must now collect from Davco through the considerably more complicated, costly, and uncertain process for collecting on its judgment.

¶53 Davco also seems to argue, under similar reasoning, that Fisher cannot be individually liable for damages because Davco Management, not Fisher, caused the damage by not fulfilling its obligation to pay over rents under the trust deeds. Again, we disagree. The Ex Parte Order named both Davco Management and Fisher, who were both parties to the case at that time. And

even though Fisher was later dismissed from the suit, "[c]learly, a trial court has the power to hold nonparties in contempt if those parties conspire to frustrate a lawful order of the court." *Crank v. Utah Judicial Council*, 2001 UT 8, ¶ 25, 20 P.3d 307. Both Davco Management and Fisher were bound by the Ex Parte Order, and Fisher, as the member-manager, was the person who physically collected and then retained the rents that should have been deposited with the court. Therefore, both Davco Management and Fisher violated the Ex Parte Order.[15]

¶54    For these reasons we cannot agree that the Ex Parte Order had no greater significance than to simply restate Davco's existing obligations. We conclude that the district court properly awarded damages to Iota. Further, we are not persuaded that the district court improperly found Fisher in contempt or improperly included him as a party to the contempt judgment.

B.    Davco's Challenge to the District Court's Calculation of Damages

¶55    Davco argues that the district court abused its discretion by denying Davco permission "to present evidence showing that [Iota's] calculation of the amount of rents allegedly withheld [was] wrong." Specifically, Davco suggests that the district court

---

15. Davco's arguments might be more persuasive if the contempt judgment provided Iota with a double recovery, but the district court ensured that would not happen. The original deficiency judgment included a component representing the rents and other revenues assigned under the trust deeds but not paid over by Davco between default and foreclosure. The contempt judgment appeared to overlap the deficiency judgment with respect to those rents and revenues accruing after the date of the Ex Parte Order. The court however prevented a windfall to Iota when it ordered that any damages Iota recovered under the contempt judgment would offset amounts owed under the deficiency judgment.

improperly allowed "security deposits, late fees, utility payments, and other payments to be part of 'rents.'"

¶56   In support, Davco supplies us with bare citations to the record related to the court's decision on this point but does not provide us with any legal authority or analysis. Davco's complete analysis is the assertion that "the trial court erred in denying Davco and Mr. Fisher their right to attack [Iota's] calculation of damages" because "the acts of the trial court, the Judgment, the Findings of Fact and the Conclusions of Law are void and the substantive rights of Davco and Mr. Fisher have not been affected."

¶57   We do not understand from Davco's argument how the "acts of the trial court . . . are void," unless the assertion refers to Davco's argument in other contexts that the preremand contempt proceedings were void because the court lacked jurisdiction over them, a position we have already rejected. Nor is it apparent how void actions or "the substantive rights of Davco and Mr. Fisher [not having] been affected" should lead us to conclude that the district court erred in making an evidentiary ruling at the postremand hearing.

¶58   Without any legal basis or reasoned analysis from Davco explaining how the court's evidentiary decision was wrong, it is impossible for us to conclude that the court abused its discretion. Where, as here, "the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court," we decline to address this issue further and consequently the district court's evidentiary ruling stands. *Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 25, 379 P.3d 18 (citation and internal quotation marks omitted); *Broderick v. Apartment Mgmt. Consultants, LLC*, 2012 UT 17, ¶ 11, 279 P.3d 391 (explaining that "[appellate courts] have discretion to not address an inadequately briefed argument" (citation and internal quotation marks omitted)).

C.      Davco's Challenge to the District Court's Attorney Fees Award

¶59    After again finding Davco in contempt on remand, the district court awarded Iota all its contempt-related attorney fees and costs, including those incurred before our reversal and remand in *Iota I*. Davco argues that the district court's attorney fees award was incorrect for several reasons: (1) Iota was not entitled to fees incurred in the original contempt proceeding because it was void; (2) it was improper to award Iota fees for the contempt proceeding overturned on appeal; (3) Iota did not apportion or separate its fees correctly; (4) the court allowed Iota to double bill; (5) Iota's fees were unreasonable; and (6) the court improperly allowed costs for photocopying, telephone calls, and postage. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Home Abstract & Title Co. v. Am. Pension Services, Inc.*, 2012 UT App 165, ¶ 2, 282 P.3d 1015 (citation and internal quotation marks omitted). But "the trial court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988).

¶60    The contempt statute allows the aggrieved party to recover its "costs and expenses." Utah Code Ann. § 78B-6-311(1) (LexisNexis Supp. 2016). "The 'costs and expenses' described in this section include 'the attorney fees the damaged party incurred.'" *Utah Telecomm. Open Infrastructure Agency v. Hogan*, 2013 UT App 8, ¶ 31, 294 P.3d 645 (citation omitted); *see also Clarke v. Clarke*, 2012 UT App 328, ¶ 29, 292 P.3d 76 ("Damages incurred due to another's contemptuous conduct may include related attorney fees."). Therefore, we agree with the district court that it had the power to award fees.

1.      Fees Awarded from the Original Proceeding

¶61    On remand, the district court awarded Iota all the attorney fees and costs it incurred in the contempt proceedings before *Iota I*. The court did not take new evidence on those fees

but apparently relied on Iota's original submissions in support of the court's earlier attorney fee award. Davco argues that the court's award of fees from the preremand proceeding was improper "[b]ecause the trial court did not have subject matter jurisdiction for the contempt charges." Therefore, according to Davco, "all other acts of the trial court for the contempt charge in the principal case, including the awarding of attorney fees and costs, are void." Davco also contends, apparently in the alternative, that the preremand proceedings were "a separate case." Therefore, Iota "had to have its [attorney fees] records introduced in evidence at the evidentiary hearing . . . for the trial court to consider them" and that Iota "failed to introduce" such records.

¶62     Both arguments fail for the reasons we have previously stated. First, the district court had subject matter jurisdiction over this case, both before and after remand, and the original contempt proceedings were therefore not void. And while it is true that this court vacated the court's first contempt judgment in *Iota I*, we did not disturb any of the associated evidence or factual findings that led to the judgment. *See Iota I*, 2012 UT App 218, ¶ 40, 284 P.3d 681. That is, all the evidence and attorney fee records that supported the original judgment remained intact, even though the judgment itself was vacated.

¶63     Second, the proceedings before and after remand were part of the same case. As we explained above, except for the vacated judgment, the court properly took judicial notice of the proceedings before remand, including all the documents and other evidence from the earlier contempt proceedings. As a result, Iota was not required to again submit its attorney fee evidence from the original contempt proceeding—all of that information was properly before the court. Accordingly, we are not persuaded that the trial court erred by relying on these in awarding attorney fees for the preremand contempt proceedings.

2.    Fees Awarded for the Motion for Contempt

¶64    After *Iota I*, on September 17, 2012, Iota restarted the contempt proceedings by filing an affidavit as required by statute and again moving the district court to find Davco Management and Fisher in contempt. Davco contends that Iota is "not entitled to attorney fees for [that] motion for contempt" because "the trial court denied [Iota's] motion." In support, Davco points out that, in early 2013, the court purportedly denied a motion for contempt, and according to Davco, the motion that the court denied was Iota's postremand motion from 2012. Davco asserts that awarding attorney fees based on a denied motion is an abuse of discretion. We would agree, but the record does not support Davco's assertion.

¶65    The district court did enter an order denying a motion for contempt in early 2013 as Davco contends, but the court stated that the denial applied to a motion "filed on September 27, 2010." Thus, whatever motion the court purported to deny was not the pending motion on remand filed in 2012.[16] And even if the court had actually denied the pending 2012 motion for contempt, that denial was meaningless in the broader context of the remanded proceedings considered as a whole. On remand, the court received new briefing on the contempt issue and conducted a new evidentiary hearing as we have previously discussed. The court then entered a new contempt judgment. Thus, even assuming the court had denied the 2012 motion

---

16. The record is not clear what motion the court intended to deny with its 2013 order because no motion for contempt was filed in the original proceeding on September 27, 2010. However, the court vacated its original contempt judgment pursuant to our decision in *Iota I* on the very same day at roughly the same time. Thus, it is probable that both actions were simply judicial housekeeping in response to our *Iota I* decision and the erroneous date reference was simply a clerical error. Davco has not attempted to explain the discrepancies.

rather than some other motion as Davco contends, the denial would have had no meaningful effect because the court ultimately granted Iota's contempt motion after further proceedings. And the court's attorney fees award for postremand contempt proceedings was clearly based on that process and the court's ultimate decision, rendering the 2012 denial essentially anomalous, if not a nullity.

¶66 Davco also claims that Iota's "motion for contempt was not warranted by existing law." As we understand it, Davco contends that it was denied due process because, "[b]y filing the motion for contempt, [Iota] denied Davco and Mr. Fisher of the right to counsel, the right to confront witness[es], and the right to offer testimony." Davco, however, does not explain why the motion was not warranted by law or how it violated due process.[17] Indeed, the record shows that Davco not only had the opportunity to confront witnesses and offer testimony, but that Davco in fact did all of those things, and was represented by counsel when it did so at the contempt hearing. Therefore, we conclude that awarding attorney fees based on the motion for contempt was within the court's discretion and did not violate Davco's right to due process.

---

17. The list of rights Davco claims it was denied includes those primarily guaranteed to criminal defendants. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel and the right to confront witnesses. Article I, section 12 of the Utah Constitution guarantees criminal defendants the right to counsel, to confront witnesses, and to testify on their own behalf. Davco does not explain how these rights apply to this civil case, or how the mere filing of a motion by an adverse party could work a denial of these rights.

### 3. The Evidentiary Basis for the Attorney Fees Award

¶67 Davco also asserts that Iota did not properly apportion or separate out nonrecoverable fees, that it double billed on some fees, and that the fees were altogether unreasonable. Although it cites one case to support the basic proposition that recoverable fees must be separated from nonrecoverable ones, Davco's brief contains no record citations that would allow us to understand its contention as applied to the facts of this case. Likewise, the double billing portion of the brief provides no record or legal citation, nor does it attempt to explain what constitutes impermissible double billing or how we could check for it now. For instance, Davco appears to argue that two attorneys working together on a project is per se double billing, but collaboration is a common practice in litigation and is not a basis for rejecting an attorney fees request standing alone. Davco also asserts that the fees award was unreasonable because Iota billed more than seventeen hours to oppose Davco's motion to strike the Ex Parte Order. Again, this section of Davco's brief does not cite to the record and offers only the conclusory allegations that Iota "did not perform any new legal work" and instead "copied their prior pleadings."

¶68 As explained above, we do not address issues that are inadequately briefed. *See supra* ¶¶ 55–57. Because Davco supplied no reasoned analysis based on legal authority for its assertion that the fees were unreasonable, we decline to further address these points. *See Broderick v. Apartment Mgmt. Consultants, LLC.*, 2012 UT 17, ¶ 11, 279 P.3d 391 (explaining that "[appellate courts] have discretion to not address an inadequately briefed argument" (citation and internal quotation marks omitted)).

### 4. Accounting for the Costs Awarded

¶69 Finally, Davco asserts that the court improperly awarded Iota the costs of photocopying, long-distance calls, and postage. We again conclude that Davco has failed to "do the heavy lifting" required for us to reach the merits of its argument. *State*

*v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448. For instance, Davco uses *Stevensen 3rd East, LC v. Watts* to support the proposition that copying, phone calls, and postage are not the proper subject of an award of costs. 2009 UT App 137, ¶ 68, 210 P.3d 977. However, *Watts* only mentions photocopying, not phone calls and postage, and Davco itself explains that the *Watts* decision arose under Utah Rule of Civil Procedure 54, not under the contempt statute, which was the basis for the judgment here. The contempt statute provides that the court may order payment of "a sum of money sufficient to indemnify and satisfy the aggrieved party's costs and expenses." Utah Code Ann. § 78B-6-311(1) (LexisNexis Supp. 2016).

¶70 Without more explanation from Davco, we are not persuaded that the facially dissimilar phrases "a sum of money sufficient to indemnify and satisfy the aggrieved party's costs and expenses" under the contempt statute should be interpreted to mean the same thing as "those fees which are required to be paid to the court and to witnesses" under rule 54. *Compare id.*, *with Watts*, 2009 UT App 137, ¶ 63 (defining "costs" for purposes of rule 54). As a consequence, we are not persuaded that the district court erred in awarding costs to Iota.

## IV. Attorney Fees on Appeal

¶71 As a final matter, we address Iota's request for an award of attorney fees and costs on appeal. "The general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Utah Dep't of Social Services v. Adams*, 806 P.2d 1193, 1197 (Utah Ct. App. 1991); *see also Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 64, 355 P.3d 947 ("We have recognized in the context of statutory attorney fee awards that when a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)). We therefore award Iota the reasonable attorney fees incurred on appeal and remand to the district court to determine the appropriate amount.

CONCLUSION

¶72   We affirm the district court on all issues. The court correctly applied the collateral bar doctrine and did not abuse its discretion in finding contempt, in calculating damages, in entering a judgment against Davco for violation of the Ex Parte Order, or in awarding attorney fees. We also conclude that Iota is entitled to the attorney fees required to defend this appeal, in the amount to be determined by the district court on remand.

———————