MAURICE EARL DILL a/k/a Charles Day v.
STATE OF MARYLAND

[No. 495, September Term, 1974.]

*Decided February 21, 1975.*

696

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Allan P. Feigelson, Assigned Public Defender,* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *Ford Loker, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## STATEMENT OF CASE

The charging document in this case was an arrest warrant issued on 11 October 1973 by a District Court commissioner upon the sworn application of a police officer on information received. Maryland District Rules 702, §§ a and f, and 706c. It charged that MAURICE EARL DILL (also known as Charles Day) did on 4 October 1973 "at 3113 St. Paul Street (basement) expose his penis to Mary Crawford Clawsey by the act of taking his erect penis out of his pants and holding it between his thumb and forefinger in her view and in the open view of others in a public place." Interlined after the word "expose" was the phrase "parts of his body required by law to be covered." The warrant declared that Dill was "formally charged" with a violation of the common law. On 6 November when the warrant came on for trial in the District Court, Courts Art. § 4-301(1), Dill prayed a jury trial, Courts Art. § 4-302(d). He was convicted at a bench trial in the Criminal Court of Baltimore on 8 January 1974 and on 28 March was sentenced to two years. He appealed.

## ISSUE FOR DECISION

When alembicated, the actual issue presented for decision

is whether, in Maryland, the common law crime of indecent exposure has been repealed by legislative enactment. Dill asks: "Can the Appellant be charged, tried, convicted and sentenced under a common law crime if the acts constituting that crime are specified in a Maryland statute?" The issue is of obvious importance to Dill, if for no other reason, because of the punishment permitted. "In the case of common law crimes, the only restrictions on sentence are that it be within the reasonable discretion of the trial judge and not cruel and unusual punishment." *Kirkorian v. State,* 233 Md. 324, 326. See *Messina v. State,* 212 Md. 602, 607. The argument set out in Dill's brief does not speak to his question as framed. It, in effect, is limited to the question of punishment. Dill claims that he should have been sentenced under Code, Art. 27, § 122 "rather than under the common law" and his conclusion is "The sentence of the lower court is illegal and should be stricken." [1] The State meets Dill's argument. It presents as the issue: "Was the two year sentence imposed in the instant case lawful." It argues that it was.

The first hurdle which Dill must overcome, and which is not mentioned by him or the State, is that neither the matter of the repeal of the common law nor the legality of the punishment imposed was presented to the trial court. "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court; . . . ." Maryland Rule 1085. We may, however, pursuant to the Rule, decide a point or question of law which was presented to the lower court when a decision thereon is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal to this Court even though such point or question of law was not decided by the lower court. And where jurisdiction cannot be conferred on this Court by waiver or consent of the parties, a question as to the

---

1. The sentence authorized upon conviction of an offense proscribed by § 122 of Art. 27 is "a fine of not less than five dollars nor more than fifty dollars and costs. Any fine shall be paid pursuant to the provisions of Art. 38, § 4," which includes directions with regard to payment of a fine and provisions with respect to failure to pay a fine.

jurisdiction of the lower court may be raised and decided in this Court whether or not raised and decided in the lower court. *Moore v. State,* 15 Md. App. 396.

We believe we may decide the question whether the common law crime of indecent exposure is repealed by statute. We so believe for two reasons. First, we think that the question was necessarily before the court below, even though presented by implication, and that it is desirable for the guidance of trial courts, both circuit courts and District Courts, that it be decided. Second, jurisdiction of the trial court is involved, both at the guilt stage and the penalty stage of the proceedings. We shall discuss the jurisdiction of the Criminal Court of Baltimore to try the case later in this opinion, but we now observe that, with respect to the sentence, whether the trial court exceeded its power by prescribing a penalty contrary to law concerns its jurisdiction. *State ex rel. Sonner v. Shearin,* 272 Md. 502, 526. Whether it did so exceed its power depends on whether the common law penalty for the offense is in effect in Maryland.

## THE LAW

### The Common Law Crime of Indecent Exposure

At the common law of England, to which the inhabitants of Maryland were declared to be entitled by Article 5, Declaration of Rights, Constitution of Maryland, indecent exposure of the person was a misdemeanor. L. Hochheimer, *Criminal Law* § 741, p. 453 (1st ed. 1897); Clark & Marshall, *Law of Crimes,* § 11.08, p. 779 (7th ed. 1967); R. Perkins, *Criminal Law* 395-396 (2d ed. 1969); 2 *Wharton's Criminal Law and Procedure* § 784, pp. 625-627 (Anderson ed. 1957); Annot. 94 A.L.R. 2d 1353; Annot. 93 A.L.R. 996.[2] The

---

2. Perkins points out, at 395-396: "Blackstone did not deal with [the offense of indecent exposure] separately. 'The last offense which I shall mention,' he said, 'more immediately against religion and morality, and cognizable by the temporal courts, is that of open and notorious *lewdness;* either by frequenting houses of ill fame, which is an indictable offense; or by some grossly scandalous and public indecency, for which the punishment is by fine and imprisonment.'" The quote from Blackstone appears in 4 Bl.

authorities above cited are in substantial accord that at the common law indecent exposure was the wilful and intentional exposure of the private parts of one's body in a public place in the presence of an assembly. Thus, its main elements were the wilful exposure, the public place in which it was performed, and the presence of persons who saw it. The common law offense was held to exist in Maryland in *Messina v. State, supra.* The Court of Appeals described it, at 605-606:

> " 'Indecent exposure in a public place in such a manner that the act is seen or is likely to be seen by casual observers is an offense at common law * * *. Ordinarily, * * * the place where the exposure is made must be public. What constitutes a public place within the meaning of this offense depends on the circumstances of the case. The place where the offense is committed is a public one if the exposure be such that it is likely to be seen by a number of casual observers * * *. Indecent exposure on a public highway so that one person sees, and others passing by can see, is an offense * * *.' 67 C.J.S., *Obscenity*, Sec. 5. *Hochheimer on Crime and Criminal Procedure*, 2nd Ed., p. 430, defines the common law crime of indecent exposure as consisting of 'exposure in public of the entire person, or of parts that should not be exhibited. An

---

Comm. *64, chapter 4. Chapter 4 is entitled "Of Offenses Against God and Religion." Perkins opines: "In other words private indecency was exclusively under the jurisdiction of the ecclesiastical court but public indecency of an extreme nature was indictable. And, in the early view, indecent exposure of the person was merely one form of obscene exhibition."

We observe, however, that "Persons wilfully, openly, lewdly, and obscenely exposing their persons in any street or public highway, or in the view thereof, or in any place of public resort, with intent to insult any female" were said by Blackstone to be "Rogues and vagabonds." 4 Bl. Comm. *169. There were twelve other categories of rogues and vagabonds, which were one of three classes of vagrants. The other two classes were "idle and disorderly persons" and "incorrigible rogues." *See Downes v. State*, 11 Md. App. 443, 274 A. 2d 663. Blackstone said that rogues and vagabonds were "punishable by a single magistrate with three calendar months' imprisonment and hard labour." *169.

exposure is "public," or in a "public place," if it occurs under such circumstances that it could be seen by a number of persons, if they were present and happened to look.' A number of cases have held that it is immaterial that the exposure is seen by only one person if it occurs at a place open or exposed to the view of the public and where anyone who happened to have been nearby could have seen if he had looked. The rule is stated in *Reg. v. Webb,* 3 Cox, C. C. 183. *See* also *Morris v. State* (Ga.), 34 S. E. 577, explaining *Reg. v. Webb;* and *Reg. v. Farrell,* 9 Cox, C.C. 446; and *Commonwealth v. Hamilton* (Ky.), 36 S.W.2d 342. Cases on the subject are collected in a note in 93 A.L.R. 996. * * *.

Indecent exposure, to amount to a crime, must have been done intentionally. Intent may be inferred from the conduct of the accused and the circumstances and environment of the occurrence. The essential intent is a general and not a specific intent. An exposure becomes indecent, and a crime, when defendant exposes himself at such a time and place that, as a reasonable man, he knows or should know his act will be open to the observation of others. *State v. Martin* (Iowa), 101 N. W. 637; *Peyton v. District of Columbia,* 100 A. 2d 36, 37.' " [3]

## *The Statutory Crime of Indecent Exposure*

Indecent exposure was dealt with in Maryland by legislative enactment in 1902. Chapter 281, § 67A of the Acts

---

[3]. In *Messina* the Court rejected the contention of the defendant, who was in an automobile parked on the street, that because only one person saw him, it was not a public exposure. It said that indecent exposure on a public highway so that one person saw it and other persons passing could see it was an offense. This follows the great weight of authority in this country that to support a charge of indecent exposure under common law, it is not necessary to show that more than one person actually saw the act if it was performed in a public place where others might have seen it. Annot. 94 A.L.R.2d 1353, 1357-1358. There were early English cases, however, holding that an indecent exposure seen by one person only, or capable of being seen by one person only, was not an offense at common law. Annot. 93 A.L.R. 996, 998-999.

of the General Assembly of that year added a new section to Art. 27, "Crimes and Punishments", under the sub-title "Disturbance of the Public Peace". It provided, *inter alia,* that "[a]ny person * * * who shall wilfully act in a disorderly manner * * * by indecently exposing his person on or about any steamboat wharf, dock or public waiting room, or in or about the station grounds of any railroad in the State, or in or on any steamboat, streetcar, electric car, railroad car, passenger train or other public conveyance, * * * shall upon conviction thereof, be sentenced to a fine of not less than five dollars or more than fifty dollars and costs, and when such fine and costs are not paid, the party shall be committed for not less than seven days or more than sixty days to the city or county jail, such party to be released at any time before the term of his imprisonment expires upon the payment of his fine and costs." The statute remained unchanged in substance for sixty-five years.[4] Acts 1967, ch. 520, however, made an amendment brief in content but significant in effect. It added "on or about any public place" to the places in which indecent exposure was proscribed.[5] As in effect today [6] § 122 of Art. 27 reads:

> "Any person * * * who shall wilfully act in a disorderly manner * * * by indecently exposing his person on or about any public place or any steamboat wharf, dock or public waiting room, or in or about the station grounds of any railroad in the State, or in or on any steamboat, streetcar, electric car, railroad car, passenger train or other

---

4. The Act was codified as § 94, Code of 1904; § 102, Code of 1912; § 119, Code of 1924; § 130, Code of 1939; § 144, Code of 1951; § 122, Code of 1957.

Acts 1961, ch. 616, § 7 made housekeeping changes by reason of the creation of the Municipal Court of Baltimore City.

5. The title to the Act declared that it was repealing § 122 of Art. 27, subtitled "disturbance of the Public Peace", and re-enacting it with amendments, thereby making it unlawful to act in a disorderly manner "in a public place."

6. Amendments by Acts 1968, ch. 146, § 2 and ch. 666, § 1, Acts 1972, ch. 181, § 28 and Acts 1973, ch. 332, made no change in the substantive offense. The 1972 amendment eliminated the provisions for nonpayment of fines and costs and added a sentence referring to Art. 38, § 4.

> public conveyance, * * * shall upon conviction thereof, be sentenced to a fine of not less than five dollars nor more than fifty dollars and costs. Any fine shall be paid pursuant to the provisions of Article 38, § 4." [7]

In *Matter of Nawrocki,* 15 Md. App. 252, we discussed fully whether § 122 required the actual presence of other persons who may be affected by the conduct or language proscribed. At 255-259. We held that it did. At 259.

*The Repeal of the Common Law*

The General Assembly of Maryland may by its legislative act change or entirely abrogate a rule of the common law. *Day v. State,* 7 Gill 321. *See Latz v. Latz,* 10 Md. App. 720, 730-731. "The mere grant of legislative power in a constitution implies the right to change the common law." 15 Am.Jur.2d *Common Law* 813, § 16. "Where common-law principles, associated with the subject matter with which a statute deals, are not expressly affirmed or denied, the extent to which the common law is altered or changed is left to implication." 2A *Sutherland Statutory Construction* 281, § 50.05 (4th ed., 1973). *Hooper v. Baltimore,* 12 Md. 464, 475, quoted with approval *Dwarris on Statutes,* 695: "As a rule of exposition, statutes are to be construed in reference to the *principles* of the common law. For it is not to be presumed that the Legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the Act did *not* intend to make any alteration *other* than what is *specified,* and besides *what has been plainly pronounced." Lutz v. State,* 167 Md. 12, 15, observed: "That statement of the law was approved in *Keech v. Baltimore & Washington R. R. Co.,* 17 Md. [32] 45, and *Greenwood v. Greenwood,* 28 Md. [369] 386, and announces an established rule of statutory construction. *Harrison v. State,* 22 Md. 468; *Heiskell v. Baltimore,* 65 Md. 125, 4 A. 116;

---

7. A statutory prohibition of the offense of indecent exposure may be expressed in general terms. 2 *Wharton's Criminal Law and Procedure* § 784 (Anderson ed., 1957).

12 *C.J.* 186; 25 *R. C. L.* 1054; *Sutherland on Stat. Construction,* secs. 251, 294." *Lutz* continued:

> "In 25 *R. C. L.* 1054, it is said that: 'It has been said that statutes are not presumed to make any alterations in the common law further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law. The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory.'
>
> Where, however, a statute and the common law are in conflict, the common law yields to the statute to the extent of the inconsistency *(Sutherland on Stat. Const.* sec. 294; 12 *C.J.* 186), and a statute which deals with an entire subject-matter is generally construed as abrogating the common law as to that subject."

We find persuasive the view expressed by the Superior Court of Connecticut in *State v. Salafia,* 29 Conn. Supp. 305, 284 A.2d 576:

> "When there is disparity in the punishments applicable to the offense as a common-law crime and as a statutory violation, it would be a palpable absurdity to hold that the common law had not been supplanted by the statute. State v. Collins, 28 N.M. 230, 210 P. 569; State v. One Ford Automobile, 151 Ark. 29, 235 S.W. 378. If the punishment for a common-law crime is prescribed by a statute pertaining specifically to that offense, the statute governs the punishment for the crime exclusively.

Bentley v. Commonwealth, 269 S.W.2d 253 (Ky.)."
284 A. 2d at 580.

The rationale of this view was implicit in the holding of this Court in *State v. Gibson*, 4 Md. App. 236, 242 A.2d 575, *aff'd.* 254 Md. 399, 254 A. 2d 691. We quoted from 82 C.J.S. *Statutes* § 303, the well settled rule that "where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a different penalty for the same, or practically the same offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished." This rule was applied as one ground for our holding that the legislature did not intend to permit the prosecution of offenders either for the felony of common law manslaughter, with its 10 year penalty, or for the statutory misdemeanor of manslaughter by automobile, with its three year penalty, "even though, where the prosecution is based upon gross negligence, the proof necessary to justify a conviction in either case would be precisely the same (a wanton or reckless disregard of human life)." 4 Md. App. at 246.[8] See *Reddick v. State*, 219 Md. 95, 98; Clark & Marshall, *Law of Crimes*, § 1.08, 55 (7th ed. 1967). Finally, in construing statutes, results that are unreasonable or inconsistent with common sense should be avoided, whenever possible. *Height v. State*, 225 Md. 251.

## DECISION

We consider that part of § 122, Art. 27, dealing with indecent exposure, in the light of the general rules above discussed. It is clear that prior to 1 June 1967, the effective date of ch. 520, Acts 1967, the criminal law of this State included the common law offense of indecent exposure and the statutory offense of indecent exposure constituting disorderly conduct. In both *Messina v. State, supra,* decided 5 April 1957, and *Kirkorian v. State, supra,* decided 24 January 1964, the accused was indicted for and convicted of the common law offense of indecent exposure. Each case

---

8. The crime of manslaughter is not defined by statute but is recognized by § 387 of Art. 27 and provision made for its punishment. 4 Md. App. at 247.

concerned a man seated in an automobile parked on a public highway who handled his exposed private parts in the sight of young girls. In each case the Court of Appeals affirmed the judgment, expressly holding that permissible punishment was not limited to that prescribed by the statute because the offense of indecent exposure with which the accused was charged was a common law misdemeanor. The Court held explicitly in *Kirkorian* and implicitly in *Messina* that the offense charged was not within the purview of the statute. The patent reason in each case was that the act was not performed in a place designated by the statute.

As we have indicated, in 1967 the legislature proscribed indecent exposure of the person "on or about any public place." Although the crime of indecent exposure was not defined by statute, the addition of the phrase "on or about any public place" brought the statutory crime squarely in line with the common law offense. Each then had the identical essential elements of intentional exposure, any public place, and presence of other persons. In other words, since 1 June 1967 there is no distinction between the substantive offense of indecent exposure under the common law and under the statute. The manifest result is that the amendment of § 122 of Art. 27 in 1967 repealed the common law crime of indecent exposure. It would be palpably absurd, completely unreasonable, and inconsistent with common sense to hold that the common law had not been supplanted by the statute. To conclude otherwise would be to attribute an intention to the legislature to permit the prosecution of offenders either for the common law crime, with its penalty of imprisonment limited only by the reasonable discretion of the sentencing judge and the constitutional guarantee against cruel and unusual punishments, or for the statutory offense, with its maximum penalty of a fine of $50, even though the proof necessary to justify a conviction in either case would be precisely the same. It was such a result which we found incongruous in *State v. Gibson, supra,* at 246. We hold that ch. 520, Acts 1967, repealed the common law crime of indecent exposure.

The obvious effect of our holding is that the sentence imposed on Dill was illegal. The penalty authorized by § 122 is a fine of not more than $50 and costs. If the fine is not paid (the costs shall not constitute a part of the fine), the defendant may be imprisoned until the fine is paid but in no event shall the period of imprisonment exceed one day for each $10 of the fine and where the fine is imposed for an offense for which imprisonment is not an authorized penalty in the absence of default in payment of a fine, such period shall not exceed 15 days. Code, Art. 38, § 4 (b) (1) and (3).[9]

The full consequence of our holding cuts broader than the illegality of the sentence imposed. It is that the criminal court was without jurisdiction to try the case. The District Court has exclusive original jurisdiction in a criminal case in which a person at least 18 years old is charged with the commission of a common law or statutory misdemeanor. Courts Art. § 4-301. The District Court is deprived of jurisdiction, however, if a defendant *is entitled to* and demands a jury trial at any time prior to trial. Courts Art. § 4-302 (d) (1). He may demand a jury trial in a criminal case if the penalty for the offense with which he is charged permits imprisonment for a period in excess of 3 months. Courts Art. § 4-302 (d) (2). See *Smith v. State*, 17 Md. App. 217. In the light of our holding, Dill was not entitled to a jury trial, and therefore he could not properly demand one. Because he could not demand a jury trial, the District Court retained its exclusive original jurisdiction, and the trial in the Criminal Court of Baltimore was void *ab initio* because it had no jurisdiction over the matter. The judgment is reversed and

---

9. See *Tate v. Short*, 401 U. S. 395, which held that it was a denial of equal protection to limit punishment to payment of a fine for those who are able to pay it but to convert the fine to imprisonment for those who are unable to pay it, and *Williams v. Illinois*, 399 U. S. 235, which held that when the aggregate punishment exceeds the maximum period fixed by statute and results directly from an involuntary non-payment of fine or court costs, there is an impermissible discrimination and a violation of the Equal Protection Clause.

We observe that the statutory punishment upon conviction of indecent exposure has remained unchanged for almost three-quarters of a century. It is, of course, the prerogative of the General Assembly to authorize a harsher penalty.

the case remanded with direction to the Criminal Court of Baltimore to transfer it to the District Court for trial.[10]

As we have indicated, the arrest warrant serving as the charging document read that Dill was charged with a violation of the common law. But the warrant also contained a statement of the essential facts constituting the offense charged. This statement, set out verbatim in the first part of this opinion, included all the essential elements of the statutory offense as we have found them to be. The warrant, therefore, charged an offense, and Dill was fully apprised of the charge. Declaration of Rights, Constitution of Maryland, Art. 21; *Putnam v. State*, 234 Md. 537; *Seidman v. State*, 230 Md. 305; *Dortch and Garnett v. State*, 1 Md. App. 173. See Maryland Rules 715 and 725, § b. Also the warrant not only contained the constitutionally mandated words, "against the peace, government and dignity of the State", Constitution of Maryland, Art. IV, § 13, *State v. Dycer*, 85 Md. 246,[11] but it declared that the offense charged was "contrary to the form of the Act of Assembly in such case made and provided." We think it was in substantial compliance with Maryland District Rule 706 § e (2), and that it was not fatally defective in any event. See *Lutz v. State, supra*, at 17, in which the Court of Appeals found that although the offense presented in the indictment was cognizable at the common law, the additional allegation that the offense charged was against the form of the statute may be disregarded as surplusage. See also *Joyce on Indictments* § 463 (2d ed. 1924).

> *Judgment reversed; case remanded for further proceedings in accordance with this opinion.*

---

**10.** We note that according to the docket entries of 28 March 1974 "Appeal bond [was] set at $2,500" and that on 17 May 1974 "Recognizance [was] taken by Allegheny Mutual Cas. Co. in the amount of $2,500.00." Dill was represented on appeal, however, by an assigned Public Defender.

**11.** "Indictment" includes "a charging document as defined in Maryland District Rule 702." Maryland Rule 702, § a. Under Maryland District Rule 702, § a, "charging document" includes an arrest warrant. Maryland District Rule 706 § e (2) states that a warrant shall contain "a plain, concise and definite statement of essential facts constituting each offense charged, and each formal charge placed against the defendant; . . . ."