2017 UT App 18

# THE UTAH COURT OF APPEALS

SOUTH JORDAN CITY,
Appellee,
*v.*
IAN SUMMERHAYS,
Appellant.

Memorandum Decision
No. 20150527-CA
Filed January 26, 2017

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 141401851

Tyler B. Ayres, Attorney for Appellant

Edward R. Montgomery and Rachel E. Otto,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN
concurred.

ROTH, Judge:

¶1 Before us is an interlocutory appeal from a denial of a motion to dismiss criminal charges that implicates the Fifth Amendment's Double Jeopardy Clause. We affirm.

¶2 In late 2013, Defendant Ian Summerhays allegedly violated a protective order by contacting his ex-wife via text message, and South Jordan City charged him with two counts of violating a protective order as a result. The prosecutor charged the violations as class B misdemeanors and filed the criminal information in South Jordan City Justice Court. Summerhays pleaded guilty to one count and began serving a ten-day jail sentence.

¶3     Summerhays immediately appealed his conviction to the district court, where he moved to dismiss the charges as improperly filed.[1] In the motion, Summerhays noted that justice courts have no jurisdiction to consider any criminal charge above a class B misdemeanor. He also correctly pointed out that violation of a protective order is classified by statute as a class A misdemeanor. *Compare* Utah Code Ann. § 78A-7-106(1) (LexisNexis Supp. 2016) ("Justice courts have jurisdiction over class B and C misdemeanors, violation of ordinances, and infractions committed within their territorial jurisdiction by a person 18 years of age or older."), *with id.* § 76-5-108(1) ("Any person . . . who intentionally or knowingly violates [a protective order] . . . is guilty of a class A misdemeanor[.]"). Accordingly, Summerhays argued that the justice court lacked jurisdiction to adjudicate the charged offenses.

¶4     The district court agreed and concluded that the justice court lacked subject matter jurisdiction over the alleged crimes. *Cf. id.* § 78A-7-106(1). The court therefore vacated his conviction, dismissed the case, and released him from jail. By the time of his release, Summerhays had already served seven days of his ten-day jail term. South Jordan then filed a new information against Summerhays, this time correctly charging the violations as class A misdemeanors and properly filing the case in district court.

¶5     Summerhays moved to dismiss the charges against him, arguing that the Double Jeopardy Clause prevents him "from being twice put in jeopardy [of punishment] for the same crime." The district court rejected that argument and ruled that "jeopardy did not attach in the justice court case because the South Jordan City Justice Court did not have jurisdiction in that

---

1. Timely appeals taken from a justice court conviction go to the district court, where the defendant receives a new trial. Utah Code Ann. § 78A-7-118 (LexisNexis Supp. 2016) ("In a criminal case [in justice court], a defendant is entitled to a trial de novo in the district court . . . .").

original action." On that reasoning, the court denied the motion to dismiss and Summerhays took an interlocutory appeal to this court. Because a "trial court's grant or denial of a motion to dismiss is a question of law," the "standard of review . . . is correctness." *State v. Griffin*, 2016 UT 33, ¶ 15, 384 P.3d 186 (citation and internal quotation marks omitted). A correctness standard "means the appellate court decides the matter for itself and does not defer in any degree to the trial judge's determination of law." *State v. Anderson*, 929 P.2d 1107, 1108 (Utah 1996) (citation and internal quotation marks omitted).

¶6     The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This concept, known as double jeopardy, is "fundamental to the American scheme of justice," *Benton v. Maryland*, 395 U.S. 784, 796 (1969) (internal quotation marks omitted), and "stem[s] from the underlying premise that a defendant should not be twice tried or punished for the same offense," *Schiro v. Farley*, 510 U.S. 222, 229 (1994). Specifically, the Double Jeopardy Clause protects criminal defendants against (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (citation and internal quotation marks omitted).

¶7     The question presented in this appeal is whether jeopardy attached during Summerhays' initial prosecution in justice court and if so, whether the City was thereby barred from refiling the charges against him in the district court. That question in turn hinges on when, and in what circumstances, jeopardy attaches to a defendant. The Supreme Court "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge." *Serfass v. United States*, 420 U.S. 377, 388 (1975) (citation and internal quotation marks omitted). "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In

a nonjury trial, jeopardy attaches when the court begins to hear evidence." *Id.* If neither circumstance applies, then "[i]n general, jeopardy attaches at the time the guilty plea is accepted." *United States v. Avila-Gonzalez*, 611 F. App'x 801, 803 (5th Cir. 2015); *accord State v. Horrocks*, 2001 UT App 4, ¶ 26, 17 P.3d 1145 ("Jeopardy, however, attached when the justice court accepted defendant's pleas.").

¶8     Here, Summerhays argues that jeopardy attached. However, it is well settled "that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged." *Grafton v. United States*, 206 U.S. 333, 345 (1907). Thus, when "a criminal defendant was never tried by a court of competent jurisdiction, retrial is appropriate and does not violate the Fifth Amendment to the United States Constitution." *State v. Payne*, 892 P.2d 1032, 1033 n.5 (Utah 1995) (citation and internal quotation marks omitted).

¶9     Under this firmly established principle, it appears that Summerhays was never in jeopardy because the justice court lacked jurisdiction over the offenses charged, which were by statute class A misdemeanors and beyond the scope of the justice court's authority. We now turn to Summerhays' arguments to determine whether they convince us that his situation is different from the apparently controlling cases described above.

¶10    Summerhays argues that "'lack of jurisdiction' is not an automatic bar to jeopardy." He supports that proposition by pointing us to *State v. Corrado*, where a Washington court reviewed the result of a trial in which the defendant "was tried without a charge." 915 P.2d 1121, 1123 (Wash. Ct. App. 1996). We do not disagree with Summerhays and the *Corrado* court that a generic "lack of jurisdiction" does not per se bar the attachment of jeopardy. But this is because the term "jurisdiction" is used in multiple ways.

¶11    Indeed, as the Washington court explained in *Corrado*, there are many different types of jurisdiction. *Id.* at 1127 (noting that "[t]he phrase 'lack of jurisdiction' has many meanings"). Specifically, the *Corrado* court distinguished between minor jurisdictional problems, such as when "a court has violated one of its own court rules," versus more fundamental problems, such as when "a court lacks power to hear the type of case then before it." *Id.* In *Corrado*, the court was faced with the first type of jurisdictional problem, deciding that, even when "a trial court 'lacks jurisdiction' due to the complete absence of a charging document," jeopardy may still attach. *Id.* at 1130–32. As the court explained, the judgment did not "show on its face the trial court's lack of jurisdiction; the superior court had power to hear and determine felonies, and its judgment gave no indication that its power had not properly been invoked," and therefore flaws in the charging document did not implicate the court's fundamental authority. *Id.* at 1131–32. Thus, *Corrado* stands for the proposition that jeopardy may attach even in the face of a serious procedural problem such as the failure to properly initiate a criminal case.

¶12    We have also explored the difference between various uses of the term "jurisdiction" and, like the Washington court in *Corrado*, determined that not all jurisdictional problems are materially equal. *See Iota LLC v. Davco Mgmt. Co.,* 2016 UT App 231, ¶¶ 43–44 (distinguishing between procedural jurisdiction and subject matter jurisdiction in determining the effects of a jurisdictional defect). Like the *Corrado* court, we explained in *Iota* that courts often use the term "jurisdiction" in a generic sense that does not implicate the court's essential power to hear and decide a given controversy. *Id.* And as significant as some procedural problems are—such as the failure to properly initiate a prosecution in *Corrado*—those problems do not necessarily rise to the same level of import as the fundamental jurisdictional defect at issue in this case. Here we are dealing with a lack of subject matter jurisdiction, the bedrock authority that allows a court to act at all.

¶13    Summerhays also directs our attention to *Block v. State*, 407 A.2d 320 (Md. 1979), where the Maryland Court of Appeals reversed a lower court's determination that double jeopardy did not bar a second prosecution. *Id.* at 321. Like *Corrado*, however, *Block* deals with a procedural problem, not subject matter jurisdiction. In *Block*, the trial court rendered a guilty verdict but postponed sentencing. Before she was sentenced, the defendant moved for reconsideration. *Id.* The trial court granted the defendant's motion and changed its verdict to not guilty. *Id.* The prosecution then attempted to retry the defendant, arguing that jeopardy had not attached because the procedural rule under which the court had acted only allowed the court to grant a new trial—it did not provide for reconsideration or change of verdict, and the defendant's motion had been untimely in any event. *Id.* at 321–22.

¶14    In holding that double jeopardy protected the defendant against retrial, the court of appeals made clear "that the 'jurisdiction' of the court for purposes of this principle of double jeopardy law means jurisdiction in the most basic sense." *Id.* at 322 (relying on *Grafton v. United States*, 206 U.S. 333 (1907), and "many other cases"). Thus, the *Block* court concluded, as did the court in *Corrado*, that it is "jurisdiction over the offense" that matters in a double jeopardy analysis. *Id.* at 324. Specifically, the court determined that the crime at issue was within the trial court's authority—jeopardy had attached regardless of whether the trial court had exceeded the scope of the controlling rule in reversing its guilty verdict. *Id.* The court accordingly held that the state's attempt at a second prosecution was barred. *Id.*

¶15    As we have noted, the jurisdictional deficit in this case is more fundamental than those addressed in *Block* and *Corrado*. Here, we are faced with a situation where the justice court lacked subject matter jurisdiction over the offenses charged. Because subject matter jurisdiction is the most essential and fundamental type of jurisdiction, *see Iota*, 2016 UT App 231, ¶¶ 43–44, the double jeopardy implications of lesser

"jurisdictional" problems like the ones discussed in *Corrado* and *Block* do not apply.

¶16    Finally, Summerhays points out that he spent seven days in jail under the now-vacated conviction and argues that the Double Jeopardy Clause "is designed to protect against multiple punishments" for the same crime. Summerhays is correct—as we noted above, double jeopardy indeed serves that function. *See Jones v. Thomas*, 491 U.S. 376, 381 (1989). However, the United States Supreme Court has rejected double jeopardy-based challenges to the validity of sentences imposed after a second conviction on retrial, so long as the defendant receives credit for any sentence already served. *North Carolina v. Pearce*, 395 U.S. 711, 718 (1969), *narrowed on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). In *Pearce*, the Court stated:

> We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited" in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed.

*Id.* at 718–19 (footnote omitted). Summerhays has not explained why *Pearce* does not apply to his case, and we see no obvious reason it should not.

¶17    For these reasons, we conclude that Summerhays' original conviction was void ab initio because the justice court lacked subject matter jurisdiction over the offenses charged. Because the justice court lacked essential jurisdiction, jeopardy never attached. The Double Jeopardy Clause thus affords Summerhays no protection against retrial of the charged offenses, although it

does entitle him to credit for time served on any sentence imposed should he be convicted.

¶18 Affirmed.

_____