*Cathy Sue Bromberg v. State of Maryland*, No. 900, September Term, 2023.  Opinion by Graeff, J.

**SUBJECT MATTER JURISDICTION—DOUBLE JEOPARDY—SUFFICIENCY**

**OF THE EVIDENCE**

Where appellant was charged as a first-time offender with four counts of harassment, and each charge permitted a sentence of not more than 90 days, he was not entitled to a jury trial in the circuit court.  Md. Code Ann., Crim. Law ("CR") § 3-803 (2021 Repl. Vol.). The District Court, therefore, had exclusive subject matter jurisdiction over the charges against appellant, and the judgment of the circuit court was void ab initio because it had no jurisdiction over the matter.  Accordingly, appellant's convictions were nullities, and they were void.

Here, where the circuit court lacked subject matter jurisdiction over the charges against appellant, jeopardy never attached, and the constitutional prohibitions against double jeopardy do not apply to bar a new trial in District Court.

Circuit Court for Baltimore County
Case No. C-03-CR-21-003751

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 900

September Term, 2023

_____

CATHY SUE BROMBERG

v.

STATE OF MARYLAND

_____

Graeff,
Tang,
Eyler, Deborah S.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: May 30, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The State charged Cathy Sue Bromberg, appellant, in the District Court of Maryland for Baltimore County, with four counts of harassment in violation of Md. Code Ann., Crim. Law ("CR") § 3-803 (2021 Repl. Vol.). Defense counsel prayed a jury trial, and the case was transferred to the Circuit Court for Baltimore County. Appellant subsequently waived her right to a jury trial, and the court convicted appellant of four counts of harassment. It sentenced appellant to consecutive sentences of 90 days imprisonment for each of her convictions, suspending all but 180 days. Approximately six weeks later, the court granted appellant's motion for modification of sentence, suspending the balance of appellant's sentence.

On appeal, appellant presents the following four questions for this Court's review:

1. Did the circuit court lack subject matter jurisdiction to enter a judgment on four counts of Harassment where Harassment carries a maximum penalty of 90 days' imprisonment and is ineligible for a jury trial prayer?

2. Was the evidence sufficient to demonstrate (a) that appellant was the person that committed the conduct; (b) that appellant had been warned to desist from the conduct; and (c) that the named victim was the intended victim?

3. Did the circuit court impose an illegal sentence by failing to merge appellant's four consecutive sentences for Harassment where there were not four separate courses of conduct on each charged date?

4. Did the circuit court plainly err by permitting the prosecutor to amend Counts Two and Four where those counts were committed after the return of the charging document and were not committed within the applicable statute of limitations?

For the reasons set forth below, we agree that the circuit court lacked jurisdiction over the charges, and therefore, we shall vacate appellant's convictions.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case stems from a dispute between two neighbors living in a cul-de-sac in Owings Mills, Maryland. The neighbors had lived across from each other for approximately six years.

On December 28, 2020, Maurice Howell, one of appellant's neighbors, filed an application for a statement of charges. He alleged that appellant

> harassed, yelled at, and hurled racial epithets at complainants, accusing them of bothering her house and car. This behavior of [appellant] has been constant and consistent for the past four consecutive years. On December 6, [Ms. Bromberg] yelled racial epithets [at] the complainant and his family, stating "You black criminals at [address] need to get out of my neighborhood," and ["]leave my house alone." On the [] fourteenth of December, the complainant kindly ask[ed] [appellant] to refrain from harassing, and name calling him and his family. [Appellant] replied with "N****rs," get out of the neighborhood you DON'T belong here! On 12-15-2020, 12-17, 12-19 2020 (and subsequent days after) Ms. Bromberg continued with calling of racial slurs to the Howell family. Many of these incident[s] are captured on the complainant's security system. Ms. Bromberg yells out of her front door at the complainant's residence on a nightly basis. Most recently 12/27/2020, Ms. Bromberg yelled to the [Howells] and told them to Go Back to Africa! This behavior is ongoing as I file this complaint.

**I.**

**Proceedings in the District Court**

The State subsequently issued a statement of charges. It charged appellant with four counts of harassment relating to incidents occurring "on or about" December 15, 2020, December 17, 2020, December 19, 2020, and December 27, 2020. Appellant filed a prayer

for a jury trial, requesting that her case be removed from the District Court and transferred to the circuit court.[1]

## II.

### Proceedings in the Circuit Court

Appellant subsequently waived a jury trial and requested a bench trial. On September 1, 2022, the trial began. The State asserted in its opening statement that appellant had been yelling at Mr. Howell and his family "while they're outside of their house" and "just screaming at them sometimes using racial epithets, racial slurs, and essentially yelling at them to get out of the neighborhood."[2] Appellant's counsel stated that there was not sufficient evidence that appellant was the person who yelled the harassing statements, and even if there was, there was no evidence that appellant acted "without a legal purpose" pursuant to CR § 3-803(a)(3).

Mr. Howell, a veteran, testified that he had been neighbors with appellant for six years in a cul-de-sac that had seven houses. He lived directly across from appellant within the cul-de-sac, and appellant's house faced his house. Mr. Howell "never met [appellant] personally" or had a conversation with her, but he knew "her as a neighbor being within the neighborhood."

Mr. Howell stated that he had experienced issues with appellant for the entire six years he lived in the cul-de-sac. Appellant often yelled "racial epithets" at Mr. Howell, as

---

[1] That same day, the District Court transmitted appellant's case to the circuit court.

[2] The State noted that it had amended the dates of the harassment to the specific dates captured by Mr. Howell's Ring camera.

3

well as at his grandchildren when they rode their bikes around the cul-de-sac. Mr. Howell's Ring camera captured appellant loudly yelling his name and address from her house many times. His Ring camera also caught appellant "banging." Mr. Howell could not sleep at night because of appellant's yelling. To his knowledge, appellant lived alone.

Mr. Howell testified that his neighborhood was "a very good neighborhood with very good neighbors," and his other neighbors in the cul-de-sac were very supportive of one another. The neighborhood was a "well-engaged community" that helped each other with landscaping and other things. He never had any difficulty with any of his other neighbors, but the other neighbors also had issues with appellant. Mr. Howell's other neighbors had previously attempted to speak with appellant about her yelling, and "whenever the police went [to appellant's house], she would not acknowledge anyone knocking at the door."

The State showed Mr. Howell video footage from his Ring camera dated December 13, 2020, which the State admitted into evidence.[3] Mr. Howell identified himself, his wife, and his granddaughter in the video footage, stating that the video's perspective was from his garage. He testified that it was appellant's voice saying: "Stay away from my house you black criminals, you thugs. You live in [ ] Court, you Howells."

The State introduced into evidence three other videos from Mr. Howell's Ring camera, dated December 14, 2020, January 3, 2021, and January 20, 2021. Mr. Howell

---

[3] The video depicts Mr. Howell and his grandchildren exiting his truck. Approximately thirty seconds into the video, a voice is heard yelling from appellant's house, but the words are not clear, and no person is seen yelling. Appellant's house is seen in the video as the house across the court and to the left of Mr. Howell's house.

4

testified that, in the December 14, 2020 video, appellant said "[s]omething to the tune of leave her stuff alone," which he explained was "a constant theme of someone throwing, hitting[,] or bothering her house." Mr. Howell identified appellant in the January 20, 2021 video telling him to "[s]top throwing at her house."

Prior to involving the courts, Mr. Howell called Social Services and law enforcement officers, but because "no racial epithets" or direct use of his name had occurred at that time, "a crime had not been committed." The police attempted to talk with appellant, but she did not respond when they knocked on her door. It was not until appellant began to yell "Howells" and Mr. Howell's address that he filed criminal charges to seek relief from the court. Mr. Howell was further concerned about the "lasting affect" appellant's reactions would have on his grandchildren.

At the close of the State's case, defense counsel moved for judgment of acquittal. Appellant did not introduce any evidence on her behalf. Counsel then renewed the motion for judgment of acquittal at the close of the evidence. Defense counsel argued that Mr. Howell had never had "any direct interaction with [appellant]," and there was no evidence that the voice in the videos belonged to appellant. Counsel argued that, even if the court found that the voice in the video recording belonged to appellant, the yelling involved statements to stay away from her property, which were made in reaction to a belief of infringement upon her property, and the yelling was not done without a legal purpose.

The State argued that Mr. Howell's testimony was credible, and it had met its burden of proof beyond a reasonable doubt. Appellant had notice to desist when the police went to her door after Mr. Howell's initial complaints. It noted that, in one video where

5

screaming occurred, a neighbor opened their door and said: "Shut up, Ms. Cathy," which was "an acknowledgement of the person who was doing the screaming."

At the conclusion of these arguments, and after counsel declined to make further closing argument, the court found appellant guilty. It stated:

> [T]his Court does find [appellant] to be guilty of harassment course of conduct, based upon the testimony and evidence presented. . . . The police have responded to the location in regards to the behavior, that constitutes a request to desist or someone acting on behalf of the victim. It also appears from the neighbors calling out, "Stop it, Ms. Cathy," there's also a request, someone acting on behalf of the victim. Then one of the saddest parts of hearing the testimony in this case is hearing that a veteran of the United States Military . . . did not feel they could approach a neighbor to ask on his own behalf that this behavior stop because of the situations and acts that have occurred over the course of any number of years and decades.

The court ordered a presentence investigation. It requested an evaluation by the office of the court psychiatrist, stating that the "victim and neighbors are concerned about defendant's mental health. No visitors, no one goes in or out, behavior has gone on for years." The court subsequently denied appellant's Motion to Set Aside Verdict and Grant a New Trial.

### III.

### Post-trial Motions/Hearings

### A.

### January 26, 2023

On January 26, 2023, after several hearings where the court requested additional information regarding appellant's mental health, appellant appeared with new counsel. Counsel raised a new issue, as follows:

6

[DEFENSE COUNSEL]: My question to the Court -- and I don't know if this has ever been argued, but how did this case get to the [c]ircuit [c]ourt? It doesn't appear to me it's a criminal matter the [c]ircuit [c]ourt would have jurisdiction in since it carries 90 days in jail. How did it ever get to the [c]ircuit [c]ourt to begin with, and who prayed it here?

So I question, not this [c]ourt, of course, but the [d]istrict [j]udge that allowed it to get up here, and the lawyer whoever it may have been -- what's his name?

\* \* \*

COURT: Well, I would suggest if that's an issue you wish to raise, it would need to be filed, and the State would have the proper opportunity to respond.

[DEFFENSE COUNSEL]: Right, I get that. This all came about on me yesterday and this morning, and I entered my appearance immediately once I was retained. I met with [appellant] on one occasion where she retained me, and I understand that there has been many lawyers that have been involved. Hopefully, I can get this done in a reasonable fashion where we can get her the help that she needs, if she needs the help, assuming that the doctor believe she needs the help.

Defense counsel then asked the court for a continuance "to address the jurisdictional issue." The court granted the request, noting that "the State is entitled to . . . an opportunity to prepare."

**B.**

**Procedural Motions**

On February 13, 2023, defense counsel filed a Motion to Vacate Defendant's Conviction on Jurisdictional Grounds and Return the Matter to the District Court for Trial. Counsel argued that appellant's charges should be vacated, and the matter transferred back to District Court for trial on the grounds that: (1) appellant was incorrectly charged with four separate counts of harassment instead of one count under CR § 3-803; (2) the District Court erred in allowing appellant's former counsel to pray a jury trial; and (3) the circuit

7

court lacked jurisdiction in this matter.  The court denied the motion on February 15, 2023, without holding a hearing.

On March 3, 2023, defense counsel filed a Motion for Reconsideration, arguing that the State had filed a reply to its motion to vacate that was never considered by the court or seen by defense counsel prior to the court's order.  Counsel further requested a hearing on the matter.

On March 20, 2023, the State filed an opposition to appellant's Motion for Reconsideration.  It argued that the court properly denied the initial motion because appellant had a bench trial, not a jury trial, and therefore, "the treatment [appellant] received in the [c]ircuit [c]ourt is functionally equivalent to that which would have been received in the District Court."  Moreover, "any challenge was waived when prior defense counsel elected to proceed by way of a bench trial in the [c]ircuit [c]ourt."  On March 29, 2023, the court denied defense counsel's request for reconsideration, without a hearing.

## C.

### Additional Disposition Hearings

### 1.

### March 31, 2023

On March 31, 2023, the court held an additional disposition hearing, asserting that it "wanted to hear what was going on in the neighborhood at the present time."  Angela Lee, a neighbor, testified that "[i]t's still the same," and appellant continued to set off her alarm and blow her horn at neighbors and say "racial and derogatory things about [her] neighbors."  Appellant testified that she was starting a new job the following week and had

plans to sell her house after that. The State moved to "Revoke Bail or any pretrial release," contending that appellant had not abided by the court's orders. The court denied the motion and postponed sentencing until April 21, 2023.

**2.**

**April 21, 2023**

On April 21, 2023, the court held another status and disposition hearing. Defense counsel stated that appellant wanted to continue to meet with her independent psychologist, Dr. Aaron Noonberg, Ph.D., once every two weeks. Appellant had not started the process of selling her house.

Appellant also had sought treatment from Dr. Lawrence Fishel, Ph.D., L.C.S.W.-C., as a result of the harassment charges filed against her. Dr. Fishel testified that he met with appellant ten times. Dr. Fishel sent a report to the court and reviewed the reports from other psychologists. He stated that appellant should be seen by a doctor every week and receive a medical evaluation. To his knowledge, appellant was not taking medication, and she had not "followed through with [medication]" in the past. Dr. Fishel diagnosed appellant as "delusional" and stated that jail time would "just delay the treatment" she needed.

Mr. Howell testified that he and his wife had experienced no change, and appellant continued to blow on her horn and bang on her windows, which appellant saw "nothing wrong with." According to neighbors, appellant's harassment continued to occur, appellant was the instigator, and no one voluntarily interacted with her. The court again continued the sentencing hearing.

9

## D.

### Sentencing

On June 7, 2023, at the final sentencing hearing, defense counsel stated that appellant had obtained a real estate agent. Dr. Fishel testified that appellant continued to be uncooperative and was unwilling to get a medication evaluation. The State recommended incarceration because there had been no change in circumstances in the neighborhood, and appellant refused to get mental health treatment. The court sentenced appellant to 90 days of imprisonment for each of her convictions, suspending all but 180 days.

This appeal followed.

## DISCUSSION

## I.

### Subject Matter Jurisdiction

Appellant contends that the circuit court lacked subject matter jurisdiction to hear the case because the harassment statute "only carries a 90-day sentence," and therefore, the District Court had exclusive jurisdiction over the case, and the circuit court trial was "void ab initio." The State agrees, and as explained below, we agree as well.

## A.

### Standard of Review

A "lack of subject matter jurisdiction may be raised at any time, including initially on appeal." *Beckwitt v. State*, 477 Md. 398, 420 (2022) (quoting *Derry v. State*, 358 Md. 325, 334 (2000)). *Accord* Md. Rule 8-131(a) ("The issues of jurisdiction of the trial court

10

over the subject matter . . . may be raised in and decided by an appellate court whether or not raised in and decided by the trial court."). This Court reviews the interpretation and application of statutory law under a de novo standard of review. *State v. Krikstan*, 483 Md. 43, 64 (2023). *Accord Beckwitt*, 477 Md. at 420.

## B.

## Analysis

Appellant was charged in the District Court of Maryland with four misdemeanor violations pursuant to CR § 3-803, which provides, in relevant part:

> (a) *Prohibited*. - A person may not follow another in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other:
>     (1) with the intent to harass, alarm, or annoy the other;
>     (2) after receiving a reasonable warning or request to stop by or on behalf of the other; and
>     (3) without a legal purpose.
>
> \*      \*      \*
>
> (c) *Penalty*. - A person who violates this section is guilty of a misdemeanor and on conviction is subject to:
>     (1) for a first offense, imprisonment not exceeding 90 days or a fine not exceeding $500 or both; and
>     (2) for a second or subsequent offense, imprisonment not exceeding 180 days or a fine not exceeding $1,000 or both.

Maryland Code Ann., Cts. & Jud. Proc. ("CJ") § 4-301(b)(1) (2020 Repl. Vol.) grants exclusive jurisdiction to the District Court for various offenses, subject to exceptions set forth in CJ § 4-302.  It provides, in relevant part, as follows:

> (b) Except as provided in § 4-302 of this subtitle, the District Court also has exclusive original jurisdiction in a criminal case in which a person at least 18 years old . . . is charged with:

11

> (1) Commission of a common-law or statutory misdemeanor regardless
> of the amount of money or value of the property involved.

Based on the statutes, the District Court had exclusive jurisdiction over the harassment charges, which were misdemeanors, subject to the exceptions in § 4-302. The exception that defense counsel and the District Court appeared to rely on was CJ § 4-302(e), which provides, in pertinent part, as follows:

> (e)(1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.

> (2)(i) Except as provided in subparagraph (ii) of this paragraph, unless the penalty for the offense with which the defendant is charged permits imprisonment for a period in excess of 90 days, a defendant is not entitled to a jury trial in a criminal case.

*See also* Md. Rule 4-201(c)(3) ("In the circuit court, an offense may be tried . . . on a charging document filed in the District Court for an offense within its jurisdiction if the defendant is entitled to and demands a jury trial.").

Here, where appellant was charged as a first-time offender, the charges of harassment permitted a sentence of not more than 90 days. CR § 3-803(c)(1).[4] Accordingly, appellant was not entitled to a jury trial.

In *Dill v. State*, 24 Md. App. 695, 706-07 (1975), this Court addressed a similar situation, where a defendant was not entitled to a jury trial and could not properly demand one. In that case, we held that the District Court retained its exclusive original jurisdiction, and the judgment of the circuit court was void ab initio because it had no jurisdiction over

---

[4] Although there were four separate charges, when determining whether the defendant was entitled to a jury trial, the charges are viewed individually, rather than in the aggregate. *Duckworth v. Dist. Ct. of Md.*, 119 Md. App. 73, 75-76 (1998).

the matter. *Id.* *See also Fielding v. State*, 238 Md. App. 262, 280 (2018) (vacating convictions and remanding with instructions to grant motion to dismiss "[b]ecause the circuit court lacked fundamental jurisdiction over these cases, [and, therefore,] its judgments were 'nullit[ies]'").

Accordingly, we agree with the parties and hold that the circuit court did not have subject matter jurisdiction over the charges against appellant. Appellant's convictions, therefore, were nullities.

## II.

## Remedy

Although the parties agree that the convictions should be vacated, they disagree about how the case proceeds from here. In appellant's initial brief, she asked us to vacate the convictions and remand to the District Court for a new trial. The State agreed that was the proper remedy. The State then discussed whether it was required to address the argument that the evidence was insufficient to support the convictions. It noted that, ordinarily,

> due to double jeopardy principles, the Court would be required to address the merits of an evidentiary insufficiency claim even when it accepts the State's concession that reversal is warranted on other grounds. *See Hook v. State*, 315 Md. 25, 44 (1989) ("It is settled that the protection against double jeopardy generally does not limit the power of a *competent tribunal* to retry a defendant who has succeeded in getting his first conviction set aside on grounds *other than the sufficiency of the evidence*.") (emphasis added); *see generally Burks v. United States*, 437 U.S. 1, 18 (1978) (holding that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient").

The State then explained that, in this case, there was

13

no reason to reach Bromberg's evidentiary sufficiency claim, as she appears to acknowledge. (See Appellant's Br. at 34 (arguing that Bromberg's convictions must be vacated and remanded for trial in the District Court based on lack of jurisdiction or "[a]lternatively," that the evidence was legally insufficient)). It is clear that where there is no subject matter jurisdiction (i.e., the court in which the conviction was rendered was not a "competent tribunal"), there is no double jeopardy. *See Parks v. State*, 287 Md. 11, 16 (1980) ("A trial court has jurisdiction for purposes of double jeopardy when it has jurisdiction over the subject matter and the person of the defendant.").

In appellant's reply brief, she argued that this Court should address the sufficiency of the evidence argument because a retrial would be barred on double jeopardy grounds if the underlying evidence was insufficient. Appellant asserted that jeopardy attached after the first witness was sworn because she not only was at risk of conviction and punishment, she actually was convicted and did receive punishment. In a sur-reply brief, the State argued that where, as here, a court does not have subject matter jurisdiction of a matter, jeopardy does not attach.

"Double jeopardy 'bars multiple punishments and trials for the same offense.'" *Scriber v. State*, 437 Md. 399, 408 (2014) (quoting *State v. Long*, 405 Md. 527, 536 (2008)). The Fifth Amendment's prohibition against double jeopardy is "applicable to the states through the Fourteenth Amendment." *Id.* at 407. Maryland common law also "provides well-established protections" against double jeopardy. *Id.* at 408 (quoting *Long*, 405 Md. at 536). Constitutional guarantees against double jeopardy prohibit: "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; [and] (3) . . . multiple punishment for the same offense." *Parks*, 287 Md. at 14.

14

Jeopardy attaches "when the defendant has been 'put to trial before the trier of the facts, whether the trier be a jury or a judge,' and thereby 'subjected to the risk of conviction.'" *Mansfield v. State*, 422 Md. 269, 282 (2011) (quoting *Serfass v. United States*, 420 U.S. 377, 388-92 (1975)). In a jury trial, jeopardy attaches when the jury is sworn, *see Caldwell v. State*, 164 Md. App. 612, 647 (2005), and in a bench trial, it attaches "when the judge begins to hear or receive evidence." *In re Kevin*, 402 Md. 624, 636 (2008).

Although these general principles are not in dispute, there is an exception for the situation in which the court does not have subject matter jurisdiction over the offense. In that situation, jeopardy does not attach and principles of double jeopardy do not apply. *See Grafton v. United States*, 206 U.S. 333, 345 (1907) ("[B]efore a person can be said to have been put in jeopardy of life or limb[,] the court in which he was acquitted or convicted must have had jurisdiction to try him of the offense charged."); *Ball v. United States*, 163 U.S. 662, 669 (1896) ("[a]n acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void," and it is no bar to a subsequent trial in a court with jurisdiction of the offense); *Hall v. McKenzie*, 575 F.2d 481, 484 (4th Cir. 1978) ("[I]t is settled that an accused cannot be placed in jeopardy by a court lacking jurisdiction to decide his case."); *Powers v. State*, 70 Md. App. 44, 48 ("Before th[e] prohibition [against double jeopardy] can be invoked, however, it must appear that the earlier conviction or acquittal occurred in a court which had jurisdiction over the offense and the person of the accused."), *cert. denied*, 309 Md. 521 (1987); *State v. Shirey*, 242 A.3d 1103, 1107 (Me. 2020) ("Jeopardy cannot attach if the court lacks subject matter jurisdiction, i.e., the authority to adjudicate the type of criminal offense charged.").

15

As the Supreme Court of Maryland explained in *Parks,* 287 Md. at 19, there is a distinction, for double jeopardy purposes, between a conviction or acquittal resulting from a court that lacks subject matter jurisdiction and a court that improperly exercises jurisdiction. "[W]hen the trial court has fundamental jurisdiction over a criminal cause, its judgment is not invalidated because of an improper exercise of that jurisdiction." *Id.* In that case, the Court concluded that the circuit court had subject matter jurisdiction over the case, but the court improperly exercised its jurisdiction based on the expiration of statutory time constraints, and therefore, the judgment rendered was voidable, not void. *Id.* Accordingly, the prohibitions against double jeopardy still applied, but by challenging the conviction, on grounds other than sufficiency of the evidence, the defendant "erased any jeopardy which attached by virtue of his first trial." *Id.* In other words, jeopardy did not terminate upon conviction, but rather continued once the defendant successfully appealed based on expiration of the statutory time period to bring appellant to trial. *Id.* The Court made clear, however, that when a court lacks "fundamental jurisdiction," *id.*, that is, jurisdiction over the *subject matter and person* in the case, jeopardy never attaches in the first place, and the prosecution of the charges against the defendant are considered a nullity. *Id.* at 16.

More recently, the Utah Court of Appeals addressed the distinction between the lack of subject matter jurisdiction and the improper exercise of jurisdiction for purposes of double jeopardy. In *South Jordan City v. Summerhays*, 392 P.3d 855, 858-90 (Utah Ct. App. 2017), the defendant pleaded guilty in the South Jordan City Justice Court to a class B misdemeanor for violation of a protective order and began serving a ten-day period of

16

incarceration. *Id.* at 857. On appeal, the court vacated his conviction because the proper charge was a class A misdemeanor, which the justice court lacked jurisdiction to hear. *Id.* When the State re-charged the defendant in the district court, Summerhays moved to dismiss the charges based on double jeopardy, arguing that "'lack of jurisdiction' is not an automatic bar to jeopardy." *Id.* at 858. The Utah Court of Appeals noted that, although double jeopardy may attach when there are "minor jurisdictional problems," such as a violation of the court's own rules, when, as there, the court "lacked subject matter jurisdiction over the offenses charged," jeopardy never attached. *Id.* at 858-59.[5]

Here, the parties agree, as does this Court, that the circuit court lacked subject matter jurisdiction over the charges against appellant for harassment as a first-time offender. We hold that appellant's convictions, therefore, are a nullity and void. Jeopardy never attached, and the constitutional prohibitions against double jeopardy do not apply to bar a new trial in District Court. Accordingly, we need not address appellant's arguments regarding sufficiency of the evidence.[6]

> **JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED AND REMANDED TO THE CIRCUIT COURT TO TRANSFER TO THE DISTRICT COURT FOR TRIAL. COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

[5] The court noted that, if the defendant was retried and convicted, he was entitled to credit for any sentence already served. *South Jordan City v. Summerhays*, 392 P.3d 855, 859 (Utah. Ct. App. 2017). The State concedes that appellant similarly would be entitled to credit for any sentence served in this case if she is convicted in District Court.

[6] We also need not address appellant's contentions that the court imposed an illegal sentence and committed plain error in allowing the State to amend the charging document.